CITY OF BATON ROUGE and Parish of East Baton Rouge, Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.

No. 78–2719.

United States Court of Appeals, Fifth Circuit.

June 30, 1980.

Joseph F. Keogh, Parish Atty., Frank Gremillion, Asst. Parish Atty., Baton Rouge, La., for petitioners.

Joan Bernstein, Gen. Counsel, Washington, D. C., U. S. Environmental Protection Agency, Tex., Lee Schroer, Lloyd S. Guerci, Angus Macbeth, James Moorman, Asst. Atty. Gen., David E. Dearing, Attys., Land & Natural Resources Div., Dept. of Justice, Washington, D. C., for respondent.

Before TJOFLAT and SAM D. JOHNSON, Circuit Judges, and SEAR *, District Judge.

SAM D. JOHNSON, Circuit Judge:

The City of Baton Rouge and the Parish of East Baton Rouge (Baton Rouge) have petitioned this Court to review an order issued by the Environmental Protection Agency (EPA). The order required Baton Rouge to comply with a National Pollutant Discharge Elimination System (NPDES) permit issued to it by the EPA under 33 U.S.C. § 1342. We dismiss the petition for want of jurisdiction.

I.

Section 1311(a), title 33, proscribes the discharge of pollutants except in compliance with NPDES permits issued under section 1342.[1] Effective November 21, 1974, the EPA issued an NPDES permit to Baton Rouge, authorizing Baton Rouge to discharge wastewaters from its central sewage treatment plant into the Mississippi River. The NPDES permit requires Baton Rouge to maintain "adequate safeguards to prevent the discharge of untreated or inadequately treated waste during electrical power failures, either by means of alternate power sources, standby generators or retention of inadequately treated effluent." The permit also prohibits Baton Rouge from allowing any discharge to bypass treatment facilities, "except (i) where unavoidable to prevent loss of life or severe property damage or (ii) where excessive storm drainage or runoff would damage any facilities necessary for compliance with the terms and condition of [the] permit . . . ." Baton Rouge did not contest the validity of or seek to alter its NPDES permit when it was issued.[2]

Baton Rouge, pursuant to the requirements of its NPDES permit, has reported to the EPA 49 separate violations of its permit over the period of time from December 1976 to January 1979. These violations consisted of discharging untreated or undertreated effluent into the Mississippi. The reasons for these violations, or bypasses, were usually heavy rain flow, power failure, or mechanical failure.

Section 1319(a)(3), title 33, authorizes the EPA to issue compliance orders, requiring those in violation of their NPDES permits to comply with their permits. As a result of Baton Rouge's violations of its NPDES permit, the EPA issued an administrative order requiring Baton Rouge to comply with its permit. The order directed Baton Rouge to submit, within thirty days, a program for preventing the occurrence of bypassing due to power failures. The order also directed Baton Rouge to submit a documented schedule for eliminating bypassing including copies of contracts, work orders, and purchase orders needed to execute the schedule. Baton Rouge filed with this Court its petition for review of the EPA order. EPA responded with a motion to dismiss, claiming this Court lacked jurisdiction to review the issuance of the administrative order. By order of this Court, EPA's motion to dismiss has been carried along with the case.

---

* District Judge of the Eastern District of Louisiana, sitting by designation.

1. 33 U.S.C. § 1311(a) has several other exceptions, none of which are relevant here. It reads as follows:

    Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful.

2. The permit expired on November 20, 1979. This raises the question whether this case is moot. The EPA asserted at oral argument that the case is not moot because Baton Rouge's application for renewal of the permit postponed its expiration. The dismissal of this case on other grounds makes it unnecessary to address the mootness question.

## II.

This Court has only the jurisdiction that Congress has conferred upon it by statute. 15 C. Wright, A. Miller, and E. Cooper, Federal Practice and Procedure § 3901 (1976). The only possible statutory basis for our direct review of the EPA order in this case is 33 U.S.C. § 1369(b)(1). That subsection provides:

*Review of Administrator's Actions*

Review of the Administrator's action (A) in promulgating any standard of performance under section 1316 of this title, (B) in making any determination pursuant to section 1316(b)(1)(C) of this title, (C) in promulgating any effluent standard, prohibition, or pre-treatment standard under section 1317 of this title, (D) in making any determination as to a state permit program submitted under section 1342(b) of this title, (E) in approving or promulgating an effluent limitation or other limitation under Section 1311, 1312, or 1316 of this title, and (F) in issuing or denying any permit under section 1342 of this title, may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts such business upon application by such person. Any such application shall be made within ninety days from the date of such determination, approval, promulgation, issuance or denial, or after such date only if such application is based solely on grounds which arose after such ninetieth day.

None of the specific clauses in § 1369(b)(1) describe the EPA's issuance of an order pursuant to § 1319(a)(3) requiring compliance with a NPDES permit. Given the specificity of the review provisions of § 1369(b)(1) and the absence of any mention of compliance orders from those provisions, we hold that § 1369(b)(1) does not confer upon this Court jurisdiction for direct review of compliance orders issued by the EPA pursuant to § 1319(a)(3).

This Court and the Second Circuit have previously held that the Court of Appeals lack power to review actions of the EPA over which § 1369(b)(1) does not specifically grant review. In *Save the Bay, Inc. v. Administrator of EPA*, 556 F.2d 1282 (5th Cir. 1977), this Court held that the decision of the Administrator of the EPA not to veto a permit issued under a state NPDES program was not "within the limited category of administrative action of which . . . 33 U.S.C. § 1369 grants this Court original jurisdiction." In *Bethlehem Steel v. Environmental Protection Agency*, 538 F.2d 513, 514 (2d Cir. 1976), the Second Circuit held that it lacked power to review the EPA's approval of state water quality standards. The court reasoned that, "In view of the specificity of the judicial review provision," the omission of review of this EPA action "presents Bethlehem with considerable difficulty in establishing jurisdiction in this court." *Id.*

Thus, the rule is clear: the Courts of Appeals have jurisdiction for direct review only of those EPA actions specifically enumerated in 33 U.S.C. § 1369(b)(1). The issuance of a compliance order is not enumerated in Section 1369(b)(1). This Court lacks jurisdiction over Baton Rouge's petition for review.[3]

PETITION DISMISSED.

---

**3.** 33 U.S.C. § 1319(b) authorizes the EPA Administrator to commence a civil action in district court for any violation for which he can issue a compliance order. The Administrator in such an action can seek any appropriate relief, including an injunction. The EPA concedes that it can subject Baton Rouge to civil penalties for violations of its NPDES permit only through an action in the district court. This court will have jurisdiction of a timely appeal from a final decision by the district court in an action brought by the EPA pursuant to § 1319(b). 28 U.S.C. § 1291. We therefore reject Baton Rouge's contention that § 1369(b)(1) is unconstitutional because it does not provide for review of compliance orders.