**NATIONAL WILDLIFE FEDERATION, et al.,
Petitioners,**

v.

**Carol M. BROWNER, Administrator, Environmental Protection Agency and Environmental Protection Agency, Respondents.**

**American Forest and Paper Association, Inc.,
Intervenor.**

**No. 00–1258.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 7, 2000.

Decided Jan. 30, 2001.

Raymond B. Ludwiszewski argued the cause for Industry Petitioners Boise Cascade Corporation, et al. With him on the briefs were Peter E. Seley and Scott H. Segal. Gene E. Godley entered an appearance.

Neil S. Kagan argued the cause and filed the brief for petitioners National Wildlife Federation, et al.

Jon M. Lipshultz, Attorney, U.S. Department of Justice, argued the cause for respondents. Lois J. Schiffer, Assistant Attorney General, Karen L. Egbert, Attorney, and Carol Ann Siciliano, Attorney, Environmental Protection Agency, were on the brief. Seth M. Barsky, Attorney, U.S. Department of Justice, entered an appearance.

Before: WILLIAMS and TATEL, Circuit Judges, and SILBERMAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

The National Wildlife Federation and various pulp, paper, and paperboard companies petitioned for review of the Environmental Protection Agency's new effluent guidelines for paper mills. At this stage of the proceedings, we consider Industry petitioners' motion to dismiss NWF's petition for lack of subject matter jurisdiction. This is a simple issue. Because the statutory provision Industry petitioners invoke is not jurisdictional, we deny their motion.

I

In April of 1998, EPA promulgated regulations, known as the "Cluster Rules," governing parts of the paper and pulp industry. The Rules include both effluent limitation guidelines under the Clean Water Act and emission standards under the Clean Air Act. *See* National Emission Standards for Hazardous Air Pollutants for Source Category: Pulp and Paper Production, 63 Fed.Reg. 18,504 (April 15, 1998).

Six environmental groups, including the National Wildlife Federation, filed a joint petition for review of the Clean Water Act portion of the Rules in the Ninth Circuit. Various paper producers—we will refer to them collectively as "Industry petitioners"—then filed petitions for review of the effluent guidelines here and in the Fourth and Eleventh Circuits. The three Industry petitions were transferred to the Ninth

Circuit, which consolidated them with NWF"s. Industry petitioners moved to dismiss the NWF petition for lack of subject matter jurisdiction or, in the alternative, to transfer the case to this circuit.

Without ruling on the motion to dismiss, the Ninth Circuit transferred the case here. *Nat'l Wildlife Fed'n v. Browner*, No. 98–70506 (9th Cir. Nov. 3, 1989) (order granting transfer of venue to D.C. Circuit). We bifurcated the motion to dismiss and the merits, holding the merits in abeyance pending resolution of the jurisdictional issue. Both NWF and EPA opposed the motion to dismiss. While that motion was pending, Industry petitioners filed an additional motion to sanction both NWF and EPA for alleged disclosure, concealment, and use of protected confidential business information.

## II

Section 509(b)(1) of the Clean Water Act provides:

Review of the [EPA] Administrator's action (A) in promulgating any standard of performance under section 1316 of this title, (B) in making any determination pursuant to section 1316(b)(1)(C) of this title, (C) in promulgating any effluent standard, prohibition, or pretreatment standard under section 1317 of this title, (D) in making any determination as to a State permit program submitted under section 1342(b) of this title, (E) in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of this title, (F) in issuing or denying any permit under section 1342 of this title, and (G) in promulgating any individual control strategy under section 1314(*l*) of this title, *may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts business which is directly affected by such action* upon application by such person. . . .

33 U.S.C. § 1369(b)(1) (emphasis added). Industry petitioners assert that the language specifying review in the circuit where a petitioner "resides or transacts business" is jurisdictional. They urge us to dismiss for lack of jurisdiction because, they claim, only one of the NWF petitioners—the Clark Fork–Pend Oreille Coalition—"resides or transacts business" in the Ninth Circuit, and this petitioner lost standing (or, alternatively, its claim became moot) nine months after NWF"s petition was filed. Disagreeing, NWF argues that the "resides or transacts business" clause in section 509(b)(1) is a venue provision, that venue in the Ninth Circuit was properly established, and that Industry petitioners' standing and mootness arguments are without merit. To resolve Industry petitioners' motion to dismiss, we need address only the parties' disagreement over the meaning of section 509(b)(1).

▪ So far as we can tell, no court has yet decided whether the "resides or transacts business" requirement of section 509(b)(1) is jurisdictional. Courts and commentators, however, have assumed that similar provisions in other statutes determine venue, not jurisdiction. *See Fed. Power Comm'n v. Texaco*, 377 U.S. 33, 37–39, 84 S.Ct. 1105, 12 L.Ed.2d 112 (1964) (assuming a provision stating that an aggrieved party "may obtain review . . . in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia" was a venue provision, despite an explicit reference to "jurisdiction" later in the provision, *see* 15 U.S.C. § 717r(b)); 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3816 at 166–67 n.4 (2d ed.1986) (implying that a provision in the Federal Trade Commission Act allowing review in "any circuit . . . where such person, partnership, or corporation resides or carries on business" is a venue provision). Moreover, in

*Texas Municipal Power Agency v. EPA,* 89 F.3d 858 (D.C.Cir.1996), we decided that an analogous provision of the Clean Air Act, section 307(b)(1), determines venue. That section provides that

> [a] petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard, [any standard or any requirements under a variety of other specified sections of the Act], or any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed *only* in the United States Court of Appeals for the District of Columbia. A petition for review of . . . any other final action of the Administrator under this chapter . . . which is locally or regionally applicable may be filed *only* in the United States Court of Appeals for the appropriate circuit.

42 U.S.C. § 7607(b)(1) (emphasis added). We rejected EPA's contention that the section was jurisdictional. Noting that it "[could] be read as prescribing the choice among circuits and not the power of a particular federal circuit court to hear a claim," *see Texas Mun.,* 89 F.3d at 867, we suggested that "the provision's reference to where a petitioner may 'file'" and its "unequivocal characterization in the legislative history as a venue provision" both supported the view that it specified venue. *Id.* Although we acknowledged that there was "some 'jurisdictional' language" elsewhere in the section, such as a "clearly jurisdictional 60–day limit for filing petitions for review," and that the language was "mandatory rather than providing a 'choice' of circuits," we nevertheless thought these facts "not determinative":

> we think it more significant that federal court *power* to entertain petitions is clear, that the provision refers to *where* a petitioner must *file,* and that the apparent congressional purpose was to place nationally significant decisions in the D.C. Circuit. Given the less than clear language, the structure of the sec-

tion—dividing cases among the circuits—and the legislative history indicate that § 307(b)(1) is framed more as a venue provision.

*Id.*

In light of *Texas Municipal,* we think the statute at issue in this case determines venue, not jurisdiction. Like the statutory language in *Texas Municipal,* section 509(b)(1)'s language—"[r]eview of the Administrator's action . . . may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts business"—is best read as "prescribing the choice among circuits and not the power of a particular federal circuit court to hear a claim." *See Texas Mun.,* 89 F.3d at 867. In fact, for at least two reasons, this reading has even more facial plausibility here than it did in *Texas Municipal.* To begin with, the provision at issue in *Texas Municipal* contained exclusive language stating that a petition for review "may be filed *only*" in the specified circuit. *See id.* at 867 n. 6 (emphasis added). Despite similar language in, for example, the general venue statute for the district courts, *see* 28 U.S.C. § 1391(a) & (b), this exclusive language could have been taken to suggest that the specified court had exclusive jurisdiction over a particular kind of case. In concluding otherwise, we relied on a variety of other factors, including the legislative history and the provision's focus on where a petitioner had to "file." Because section 509(b)(1) contains no such exclusive language, it is far less plausible to think it confers exclusive jurisdiction in the first place. The Clean Air Act provision at issue in *Texas Municipal,* moreover, required petitioners to file particular kinds of petitions in particular courts—petitions for review of national actions in this circuit, and petitions for review of regional actions in the geographically appropriate circuit. Section 509(b)(1) simply allows for review of *any* enumerated claim in whichever circuit an interested person resides or

transacts business. Its purpose is thus even more clearly to "divid[e] cases among the circuits," see *Texas Mun.*, 89 F.3d at 867, placing decisions in the circuits in which "interested person[s]" are located, and thus ensuring, as EPA suggests, that "the appellate court that hears the matter has some direct connection to the parties involved in the proceeding." Brief for EPA at 3.

Our conclusion that section 509(b)(1) determines venue finds further support from the fact that, as in *Texas Municipal*, "federal court power to entertain petitions" under the section is clear: under section 509(b)(1), every interested person challenging an enumerated action has a court in which to obtain review. Industry petitioners' interpretation conflicts with this broad grant of power, since under their reading, "the punishment for a petitioner's failure to file its petition initially in the proper circuit court of appeals ... is dismissal of the petition for want of jurisdiction, even where the petitioner otherwise can demonstrate standing to bring its petition," Brief for EPA at 3, thus either denying review to an otherwise qualified person, if the statute of limitations has run, or making review more burdensome. Reading section 509(b)(1) as a venue provision comports better with the broad grant of appellate authority, since the standard remedy for improper venue is to transfer the case to the proper court rather than dismissing it—thus preserving a petitioner's ability to obtain review. *See* WRIGHT, MILLER, & COOPER § 3827 at 268–29 ("It is not surprising that in most cases of improper venue the courts conclude that it is in the interest of justice to transfer to a proper forum rather than to dismiss.").

Disagreeing with this reading of the statute, Industry petitioners argue that *Texas Municipal* actually supports their claim that section 509(b)(1) is jurisdictional, pointing out that the provision at issue in that case specified where a petition for review "may be filed," while the provision here specifies where "[r]eview ... may be

had." Noting that our decision in *Texas Municipal* singled out, among other factors, "the provision's reference to where a petitioner may 'file,'" *Texas Mun.*, 89 F.3d at 867, Industry petitioners argue that "the Court recognized [in *Texas Municipal*] that the language in Clean Air Act § 307(b)(1) is intended to limit the *petitioner's* ability to file a challenge to agency action in particular fora. The language of Clean Water Act § 509(b)(1), on the other hand, limits the *court's* ability to review such a petition." Brief for Industry Petitioners at 7 n.1.

Though perhaps not "frivolous" in the Rule 11 sense, *see* FED.R.CIV.P. 11(b)(2), this argument is exceptionally unconvincing. As we have already pointed out, our concern with the word "file" in *Texas Municipal* was motivated by the exclusive language in the provision there—language not found in section 509(b)(1). More to the point, it is simply not clear, as Industry petitioners assert, that section 509(b)(1)'s language focuses on courts rather than petitioners. The provision does not explicitly address the courts: it does not say, for example, that "only the court where any interested party resides" may review a petition. Instead, it limits only where review "may be had." And unlike the other provisions Industry petitioners mention that confer jurisdiction based on residence, section 509(b)(1) never uses the word "jurisdiction." *Cf., e.g.*, 26 U.S.C. § 7609(h)(1); *Deal v. United States*, 759 F.2d 442, 444 (5th Cir.1985) (interpreting 26 U.S.C. § 7609(h)(1) as a jurisdictional provision). Moreover, although section 509(b)(1) does not use the word "file," it does state that review may be had by an interested person in the appropriate circuit "upon *application* by such person" (emphasis added). Thus, like the provision in *Texas Municipal*, it clearly directs petitioners where to file.

Even more unconvincing is Industry petitioners' second (and main) argument for reading section 509(b)(1) as jurisdictional. Pointing out that courts have found other

provisions in the same section—such as the enumeration of Administrator actions and the limitation to "interested persons"—to be jurisdictional, *see City of Baton Rouge v. EPA*, 620 F.2d 478, 480 (5th Cir.1980) (stating that "the Courts of Appeals have jurisdiction for direct review only of those EPA actions specifically enumerated in 33 U.S.C. § 1369(b)(1)"), *Montgomery Envtl. Coalition v. Costle*, 646 F.2d 568, 577–78 (D.C.Cir.1980) (finding that the term "interested person" in section 509(b) incorporates the jurisdictional injury-in-fact requirement), Industry petitioners argue that it would be "anomalous if all the different limitations on judicial review embodied in section 509(b)(1) are considered jurisdictional *except* the provision limiting the court in which review may be had." Brief for Industry at 6. Wholly undercutting this argument, *Texas Municipal* found the fact that the judicial review provision at issue there also contained some jurisdictional restrictions to be "not determinative." 89 F.3d at 867.

Industry petitioners could have argued—but did not—that unlike in *Texas Municipal*, the legislative history of the Clean Water Act is not "unequivocal." The Senate Report accompanying the original Senate version of the Act states that "[f]or ... actions which run only to one region, [section 509] places *jurisdiction* in the U.S. Court of Appeals for the Circuit in which the affected State or region ... is located." S.REP. No. 92–414, at 85 (1971), 1972 U.S.C.C.A.N. 3668. (emphasis added). Even if the significance of this snippet of legislative history were clear, we doubt it would change our view of section 509(b)(1). For at least two reasons, however, its significance is not at all clear. First, the judicial review provision in the Senate version of the bill differed substantially from the one enacted. *See* S. CONF. REP. No. 92–1236, at 147–48 (1972), 1972 U.S.C.C.A.N. 3776. The legislative history cited above thus cannot be viewed as commenting directly on the language at issue here. Second, Congress subsequently revised section 509(b)(1), changing the original

phrase, "resides or transacts *such* business," to "resides or transacts business *which is directly affected by such action....*" *See* Historical and Statutory Notes, 1987 Amendment, 33 U.S.C.A. § 1369, at 381 (West Supp.2000). The legislative history accompanying these revisions expressly refers to section 509(b)(1) as a "venue" provision at least six separate times. *See* S.REP. No. 99–50, at 31 (1985) ("The purpose of the changes ... is to clarify the proper *venue* for court of appeals review....") (emphasis added); *id.* at 32 ("In order to eliminate ... the potential for threshold litigation over proper *venue*, the Committee amendment changes the *venue* provision....") (emphasis added); H.R. CONF. REP. No. 99–1004, at 164 (1986) ("The purpose of the changes ... is to clarify the proper *venue* for court of appeals review.... The Senate bill provides that proper *venue* for judicial review ... shall be in the Circuit Court of Appeals [where] the applicant resides or transacts business....") (emphasis added); Section-by-Section Analysis of the Water Quality Act of 1987, 133 CONG. REC. H131 (daily ed. Jan. 7, 1987), *reprinted in* 1987 U.S.C.C.A.N. 5, 42 ("Subsection (a) amends Section 509(b)(1) ... by modifying the choice of *venue* available for persons seeking judicial review of certain actions taken by the Administrator.") (emphasis added). Though it is certainly true, as Industry petitioners argue, that "subsequent legislative history is a hazardous basis for inferring the intent of an earlier Congress," *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 650, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990) (internal quotation marks omitted), it is nonetheless sufficient in this case to offset any weight we might give the fragment from the earlier Senate Report.

■ In view of these considerations, we hold that section 509(b)(1) determines venue, not jurisdiction. Since objections to venue may be waived, *see* WRIGHT, MILLER, & COOPER § 3829 at 309, and since Industry petitioners concede that "[t]he proper

venue of the present case is no longer at issue," Reply Brief for Industry at 2, we reach neither Industry petitioners' nor NWF's remaining arguments. Industry petitioners' motion to dismiss is denied, and their additional motion for sanctions is deferred to the merits panel.

*So ordered.*