# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 2, 2009         Decided April 2, 2010

No. 09-1090

AMERICAN TRUCKING ASSOCIATIONS, INC., AND THE
TRUCKLOAD CARRIERS ASSOCIATION,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY AND LISA JACKSON,
ADMINISTRATOR,
RESPONDENTS

CALIFORNIA AIR RESOURCES BOARD, NATURAL RESOURCES
DEFENSE COUNCIL, EAST YARD COMMUNITIES FOR
ENVIRONMENTAL JUSTICE, COALITION FOR A SAFE
ENVIRONMENT, AND CENTER FOR COMMUNITY ACTION AND
ENVIRONMENTAL JUSTICE,
INTERVENORS

———

On Petition for Review of a Final Action
of the Environmental Protection Agency

———

*Anthony L. Michaels* argued the cause for petitioners.
With him on the briefs were *Robert Digges*, Chief Counsel,
ATA Litigation Center, and *Thomas Richichi*.

*David J. Kaplan*, U.S. Department of Justice, Environmental Defense Section, argued the cause for respondents. With him on the brief were *John C. Cruden*, Acting Assistant Attorney General, and *Michael Horowitz*, United States Environmental Protection Agency, Office of General Counsel.

*Edmund G. Brown Jr.*, Attorney General of the State of California, *Matt Rodriquez*, Chief Assistant Attorney General, *Mary E. Hackenbracht*, Senior Assistant Attorney General, *Kathleen A. Kenealy*, Deputy Attorney General, and *Gavin G. McCabe*, Deputy Attorney General, were on the brief for Intervenor California Air Resources Board.

*Colin O'Brien*, *Aaron Colangelo*, *David Pettit*, *Melissa Lin Perrella*, and *Bart Lounsbury* were on the brief for Intervenors Natural Resources Defense Council, et al.

*Kurt R. Weise* and *Barbara B. Baird* were on the brief for *amicus curiae* South Coast Air Quality Management District in support of respondents.

Before: BROWN and KAVANAUGH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

Opinion dissenting in part filed by *Senior Circuit Judge* WILLIAMS.

KAVANAUGH, *Circuit Judge*: The Clean Air Act assigns California – not any of the other states and not the federal Environmental Protection Agency – the primary role in

setting limits on emissions from in-use non-road engines. An example of a "non-road" engine is a truck's transportation refrigeration unit, which keeps perishable goods at the proper temperature. Under the Act, each of the other 49 states may adopt a rule identical to California's. Otherwise, however, the other states are prohibited from adopting any regulation of emissions from in-use non-road engines. EPA's only role is to review California's proposed rules under a narrowly defined set of statutory criteria.

In 2004, California enacted a rule that regulates the emissions from transportation refrigeration units in trucks. EPA authorized California's rule after reviewing it under the relevant statutory criteria. The American Trucking Associations (plural, not a typo) has challenged EPA's decision, arguing that EPA misinterpreted and unreasonably applied the statutory criteria when approving the California rule. We disagree, and we therefore deny the petition for review.

I

A

Under the Clean Air Act, both the Federal Government and the States exercise responsibility for maintaining and improving air quality.

When it comes to regulating emissions from *stationary* pollution sources like waste incinerators and power plants, EPA sets national ambient air quality standards, and the individual states develop and implement plans to achieve those standards. 42 U.S.C. §§ 7409-7410.

As to regulating emissions from *mobile* pollution sources like automobile engines, EPA and the States also share responsibility depending on the kind of engine at issue. From a regulatory perspective, and oversimplifying a bit for present purposes, mobile engines fall into one of four categories: (i) new on-road, (ii) new non-road, (iii) in-use on-road, and (iv) in-use non-road.

This case concerns the fourth category – in-use non-road engines. Congress has given California the primary role in regulating emissions from those engines. *Id.* § 7543(e)(2)(A). Each of the other 49 states has the choice either (i) to follow California's lead and adopt a rule identical to California's or (ii) to adopt no regulation at all with respect to emissions from in-use non-road engines. *Id.* § 7543(e)(2); *see Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075,1087-94 (D.C. Cir. 1996).

Under this statutory scheme, EPA applies three criteria in reviewing California's proposed in-use non-road engine rules. EPA must approve a proposed California regulation unless: (1) EPA finds that California unreasonably determined that its rule is at least as protective of public health and welfare as the relevant federal standards; (2) EPA concludes that California does not need the proposed standard "to meet compelling and extraordinary conditions" in California; or (3) EPA finds that California's standards "are not consistent with" § 7543. 42 U.S.C. § 7543(e)(2)(A)(i)-(iii). That third criterion – the consistency criterion – requires EPA to assess whether the California rule prevents other states from deciding to "adopt and enforce" the California rule. Air Pollution Control; Preemption of State Regulation for Nonroad Engine and Vehicle Standards, 59 Fed. Reg. 36,969, 36,983 (July 20, 1994). The third criterion also dictates that EPA consider "the cost of compliance" with the regulation. *Id.*

5

B

In 2004, acting under that statutory scheme, the California Air Resources Board devised a plan to reduce diesel particulate matter emissions and associated cancer risks in California by 75% by 2010 and 85% by 2020. The Board promulgated emissions standards for certain in-use non-road engines – in particular, for transportation refrigeration units (or TRUs) powered by diesel engines. TRUs are used to control the temperature of trailers carrying perishable goods. For any TRU operating in California that was manufactured before December 31, 2001, California's rule required compliance by December 31, 2008. Thereafter, the rule's requirements are phased in by model year.

The California rule requires all TRUs carried on vehicles *operating* in California – not just those carried on vehicles *based* in California – to comply with California emissions standards. CAL. CODE REGS. tit. 13, § 2477(b). The rule means, in other words, that TRUs carried on vehicles based primarily in another state must comply with the California rule if and when those vehicles operate in California.

The rule affords TRU owners several compliance options: (1) replace the old TRU with a compliant engine; (2) show that the in-use TRU meets the necessary standards; (3) retrofit the TRU with a device that will reduce diesel particulate matter emissions to a compliant level; or (4) choose an alternative technological option for transporting perishable goods. *Id.* § 2477(e)(1)(A).

In 2005, as required by the federal statute, California requested EPA's authorization of the TRU rule. EPA approved the rule and explained its reasoning in a lengthy

decision. In applying the first statutory criterion, EPA concluded that California reasonably determined that the TRU rule would be at least as protective of public health and welfare as federal regulations. As to the second criterion, EPA found that California had reasonably shown it needed the rule to address "compelling and extraordinary conditions" in the state – namely California's well-known air pollution problems. As to the third criterion, EPA addressed whether the TRU rule conflicted with the statute's "adopt and enforce" provision that gives other states the choice of either following California's lead or declining to regulate emissions from in-use non-road engines at all. EPA concluded that the TRU rule satisfied that criterion because it applied only to TRUs operating in California. Also under the third criterion, EPA found that the cost of complying with the TRU rule was not unreasonable.

The American Trucking Associations is a national trade association representing the U.S. trucking industry. It challenges EPA's authorization of the California TRU rule. Our narrow task is to determine whether EPA's decision was arbitrary and capricious. 5 U.S.C. § 706(2)(A). That standard is deferential. *See FCC v. Fox Television Stations*, 129 S. Ct. 1800, 1810 (2009); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## II

Under the relevant provisions of the Clean Air Act, EPA was required to approve California's proposed TRU rule unless EPA concluded that (i) California unreasonably determined that its rule is at least as protective of public health and welfare as federal standards, (ii) California does not need its rule to meet compelling and extraordinary

conditions in the state, or (iii) California's rule precludes other states from choosing not to regulate TRUs or imposes excessive costs. 42 U.S.C. § 7543(e)(2)(A)(i)-(iii); *see* Air Pollution Control; Preemption of State Regulation for Nonroad Engine and Vehicle Standards, 59 Fed. Reg. 36,969, 36,983 (July 20, 1994). ATA does not challenge EPA's decision under the first criterion. ATA contends that EPA erred in applying the second and third criteria.

A

ATA argues that EPA erred in applying the second criterion. In particular, ATA argues that EPA erroneously found that California "need[s]" the specific TRU rule at issue "to meet compelling and extraordinary conditions" in California. 42 U.S.C. § 7543(e)(2)(A)(ii). In advancing this argument, ATA challenges EPA's interpretation of the statute and contends that EPA applied the statutory standard in an arbitrary and capricious manner.

With respect to the statutory language, EPA concluded that "compelling and extraordinary conditions" refers to the factors that tend to cause pollution – the "geographical and climatic conditions that, when combined with large numbers and high concentrations of automobiles, create serious air pollution problems." J.A. 551. The expansive statutory language gives California (and in turn EPA) a good deal of flexibility in assessing California's regulatory needs. We therefore find no basis to disturb EPA's reasonable interpretation of the second criterion. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984).

ATA relatedly argues that EPA unreasonably determined that California "needs" the TRU rule. But EPA explained that California continues to suffer from "some of the worst air quality in the nation." J.A. 552. For purposes of our deferential arbitrary and capricious review, EPA's analysis of this second criterion was reasonable and reasonably explained.

B

ATA also contends that EPA erred in applying the third statutory criterion, which requires that California's proposed rule not be inconsistent with the rest of the governing sections of the statute. As relevant here, the third criterion requires EPA to consider the California rule's impact on the other states' ability to follow or to decline to follow California's lead. The third criterion also mandates consideration of the costs associated with the California rule.

1

Section 7543(e)(2)(B) allows other states to "adopt and enforce" in-use non-road engine standards that are "identical" to California standards. 42 U.S.C. § 7543(e)(2)(B); *see Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1081-82 (D.C. Cir. 1996). A state may decline to follow California's lead; if so, however, the state may not regulate emissions from in-use non-road engines at all.

ATA argues that California's rule is a de facto national rule because many trucks pass through California and will be subject to the rule. As a result, ATA contends that other states are effectively precluded from declining to follow

California's lead, in contravention of those states' rights under the Act.

ATA's argument on this point is weak. The California rule does not require any other state to adopt California's approach, and it does "not apply anywhere but in California, and only to vehicles that have entered California . . . ." J.A. 601. If ATA's members operate trucks in California, they must comply while operating in California. If they do not operate in California, they need not comply. We find nothing about this approach to be inconsistent with the federal statutory scheme. As EPA correctly concluded, the statute allows California to regulate emissions from in-use non-road engines operating in California. ATA's argument, by contrast, would severely hinder California's efforts to address air pollution problems caused by in-use non-road engines operating in California. The statute does not support ATA's position. We agree with EPA that ATA is seeking "improperly to engraft a type of constitutional Commerce Clause analysis onto EPA's Section 7543(e) waiver decisions that is neither present in nor authorized by the statute." EPA Br. at 45. ATA's argument is best directed to Congress because the problem it identifies is inherent in the congressional decision to give California the primary role in regulating certain mobile pollution sources.[1]

ATA also contends that EPA failed to properly explain its reasoning on this interpretive point. But in its decision, EPA

---

[1] If ATA is concerned that California's rule unconstitutionally burdens interstate commerce, ATA also could attempt to bring a constitutional challenge directly to the California rule. We express no view on that possibility.

discussed the relevant statutory provision and considered the rule's implications for states other than California:

> The TRU regulations in question here do not apply anywhere but in California, and only to vehicles that have entered California, which is obviously a choice of the operator. CARB has stated that the [rule] only applies to TRU operations that occur in California and does not apply to any TRU that operates totally outside the state. CARB further concedes that it has no authority to enforce the [rule] outside of California and cannot directly compel out-of-state TRU owners and operators to comply with the [rule]. Nor does the [rule] indirectly compel other states to enforce its provisions. While other states may elect to adopt the [rule] as their own pursuant to section [7543(e)(2)(B)], that act is an independent decision of the other states. EPA notes that under the TRU [rule], California is only regulating vehicles which enter California, which does not include all TRUs in the U.S. To the extent that California has authority to regulate TRU engines under its own laws, *nothing in section [7543] prevents such regulation or limits such regulation to engines that operate solely or a majority of their time in California.*

J.A. 601-02 (emphasis added) (internal quotation and citation omitted).

EPA's review of California's regulations under the third statutory criterion is quite deferential, limited to judging whether a regulation is "not consistent" with the terms of § 7543. *See* 42 U.S.C. § 7543(e)(2)(A)(iii). The quoted passage from EPA's decision responded to ATA's argument that the California rule creates a de facto national standard; it

did so by referencing the text of § 7543. EPA reasoned that the California rule does not trample on the rights of other states to "adopt and enforce" identical rules pursuant to § 7543(e)(2)(B). EPA further explained that the statute allows California to regulate TRUs operating in California. No further explanation was necessary.

2

ATA also asserts that EPA, in applying the third criterion, failed to give "appropriate consideration to the cost of compliance" with California's TRU rule. 42 U.S.C. § 7521(a)(2). Under that provision, EPA must assess the "economic costs" of California's proposed emissions standards, including the costs resulting from "the timing of a particular emission control regulation." *Motor & Equip. Mfrs. Ass'n v. EPA*, 627 F.2d 1095, 1118 (D.C. Cir. 1979) (emphasis omitted). In approving the California TRU rule, EPA adequately considered those costs. EPA explained that businesses can comply with the TRU rule for about $2,000 to $5,000 per unit. J.A. 584. EPA also determined that the phased implementation of the rule would help minimize its cost. Although the costs of the TRU rule are not insignificant, EPA's duty under this portion of the statute is simply to consider those costs. It did so here. EPA's conclusion – namely that California's rule was consistent with § 7521(a)(2) – was reasonable and reasonably explained.

III

In the realm of air quality regulation related to in-use non-road engines, "Congress consciously chose to permit California to blaze its own trail with a minimum of federal oversight." *Ford Motor Co. v. EPA*, 606 F.2d 1293, 1297

(D.C. Cir. 1979).  We have no legal basis in this case to disrupt that congressional scheme, overturn EPA's decision, or otherwise disturb the California rule.

* * *

We deny ATA's petition for review.

*So ordered.*

WILLIAMS, *Senior Circuit Judge*, dissenting in part: California can adopt a regulation of the sort at issue here only if the federal Environmental Protection Agency authorizes it. See 42 U.S.C. § 7543(e)(2)(A). EPA, in turn, can authorize such a regulation only if it meets § 7543(e)(2)(A)(iii)'s requirement that the rule be "consistent with" § 7543 as a whole, including, of course, § 7543(e)(2)(B). Subsection (B) provides that other states may—or may not—"adopt and enforce" the California regulation as their own. Petitioner American Trucking Associations argued to the agency that California's rule on "transportation refrigeration units" ("TRUs") isn't "consistent with" subsection (B)'s "adopt and enforce" option because it amounts to a de facto national standard. While nominally directed only at vehicles or engines (of the relevant type) that enter California, ATA claimed, the regulation would have the practical effect of requiring the vast majority of such machines to comply with California's law, and so would effectively vitiate other states' prerogative to choose whether to embrace it themselves.

A logical EPA response to ATA's claim would involve a number of steps. First, it would address the threshold question whether subsection (A)(iii), coupled with subsection (B), actually proscribes EPA approval of California rules that amount to de facto national standards. Whatever the agency's answer, it would normally be expected to explain its statutory interpretation. See *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947) ("It will not do for a court to be compelled to guess at the theory underlying the agency's action."). If it exercised its interpretative authority to find no such proscription, that of course would be the end of the analysis (subject to judicial review). But if it found such a proscription, the second step would be to identify some principle by which to distinguish impermissible de facto national standards from permissible California rules with marginal spillover effects on other states. Finally, having identified such a principle, EPA would then

need to apply that principle to ATA's assertions, resolving factual disputes to the extent necessary.

In fact, EPA conducted not a single step of the necessary analysis. It did not even address the threshold question, let alone explain its answer. While the agency acknowledges on appeal that subsection (A)(iii)'s "consistent with this section" criterion requires consistency with subsection (B)'s requirement of preserving other states' options (whatever the implications of the requirement may be), see Appellants' Br. at 34-35, its decision document includes nothing resembling a similar recognition.

The passage the majority reproduces addresses arguments completely different from ATA's. It explains that the TRU rules do not "apply" outside California and that the California authorities do not claim authority to enforce them outside California or to force other state authorities to do so. See Maj. Op. at 10 (quoting EPA's discussion). Thus it refutes claims that, as far as I know, have never been made by anyone in the years during which this matter was pending before various agencies.

The closest the EPA comes to considering ATA's argument is in the concluding passage, where it merely says that nothing in the statute confines California to regulation of "engines that operate solely or even a majority of their time in California." *Id*. Really? By this language, it would be perfectly all right for the California rule to say that no vehicle may enter California if any other vehicles, anywhere in the United States and owned by the same firm, were non-compliant with the California standard.

In short, EPA's discussion here is a paradigmatic instance of an agency's failure to "examine the relevant data and articulate a satisfactory explanation for its action including a

rational connection between the facts found and the choice made." See *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted). Standard principles require us to remand the case to the agency for the exercise of reasoned decisionmaking. *Allentown Mack Sales & Service, Inc. v. NLRB*, 522 U.S. 359, 374 (1998) ("The Administrative Procedure Act, which governs the proceedings of administrative agencies and related judicial review, establishes a scheme of 'reasoned decisionmaking.' Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational. Courts enforce this principle with regularity[.]" (quoting *State Farm*, 463 U.S. at 52)).