# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 12, 2012        Decided November 9, 2012

No. 11-1184

SIERRA CLUB,
PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY AND LISA PEREZ
JACKSON, ADMINISTRATOR, U.S. ENVIRONMENTAL
PROTECTION AGENCY,
RESPONDENTS

AMERICAN CHEMISTRY COUNCIL, ET AL.,
INTERVENORS

———

On Petition for Review of Final Action of the United States
Environmental Protection Agency

———

*James S. Pew* filed the briefs and argued the cause for
petitioner.

*Madeline Fleischer*, Attorney, U.S. Department of
Justice, argued the cause for respondents.  With her on the
brief were *Norman L. Rave Jr.*, Attorney, and *Michael Thrift*,
Attorney, U.S. Environmental Protection Agency.

*Lisa M. Jaeger*, *Jeffrey A. Knight*, *David M. Friedland*, and *Leslie A. Hulse* were on the brief for intervenors American Chemistry Council, et al., in support of respondents.

Before: HENDERSON and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

Opinion concurring in the judgment filed by *Circuit Judge* HENDERSON.

WILLIAMS, *Senior Circuit Judge*:  Sierra Club here challenges a "Determination" of the Environmental Protection Agency.  In the Determination, EPA announced that it had met the regulatory obligations imposed on it by § 112(c)(6) of the Clean Air Act ("CAA"), 42 U.S.C. § 7412(c)(6).  We conclude that the Determination is a legislative rulemaking subject to the notice-and-comment provisions of the Administrative Procedure Act, 5 U.S.C. § 553.  Because EPA issued the Determination without providing notice and opportunity for comment, we vacate and remand for the agency to follow those procedures.

\* \* \*

In 1990 Congress amended the CAA to assign EPA the following duty:

> With respect to [seven specified hazardous air pollutants ("HAPs")], the Administrator shall, not later than five years after November 15, 1990, list categories and subcategories of sources assuring that sources accounting for not less than 90 per

centum of the aggregate emissions of each such pollutant are subject to standards under subsection (d)(2) or (d)(4) of this section. Such standards shall be promulgated not later than 10 years after November 15, 1990.

42 U.S.C. § 7412(c)(6). The obligation thus comprises both listing *sources* (due by November 15, 1995) and promulgating *standards* (due by November 15, 2000).

In 1998 EPA published its conclusion that it had satisfied its duty to list sources, a conclusion Sierra Club immediately challenged. But the CAA specifically precluded review of the agency's source-listing under § 112(c)(6) until the agency had issued emissions standards thereunder, 42 U.S.C. § 7412(e)(4), so we dismissed the challenge, without prejudice to the Sierra Club's seeking review once EPA issued standards. *Sierra Club v. EPA*, No. 98-1270, 1998 WL 849408 (D.C. Cir. Nov. 24, 1998).

EPA's listing of sources and promulgation of standards continued after its 1998 rulemaking, and well after the statutory deadline. As to sources, it made successive adjustments in the 1998 list by adding new sources and delisting old ones. See, e.g., 76 Fed. Reg. 9450/1 (Feb. 17, 2011) (adding gold mine source category); 73 Fed. Reg. 1916/1 (Jan. 10, 2008) (finalizing decision not to regulate gasoline distribution area sources); 72 Fed. Reg. 53,814/1 (Sept. 20, 2007) (listing electric arc furnace steelmaking facilities as an area source); 67 Fed. Reg. 68,124/1 (Nov. 8, 2002) (delisting asphalt hot-mix production, fabricated metal products, paint and allied products, paper coated and laminated, packaging and transportation equipment manufacturing, and open burning of scrap tires as area source categories).

As to emissions standards, it continued to set such standards for a variety of sources, sometimes in an express effort to satisfy its § 112(c)(6) obligations, see, e.g., 76 Fed. Reg. 15,554/1, 15,556 (Mar. 21, 2011) (setting emissions standards for 112(c)(6) chemicals emitted by industrial, commercial, and institutional boilers), sometimes with no reference to § 112(c)(6), see, e.g., 62 Fed. Reg. 52384/1 (Oct. 7, 1997) (setting emissions standards for Primary Aluminum Reduction Plants, with specific reference to chemicals listed in § 112(b), but not § 112(c)(6)).

Despite its activities in this area, EPA failed to meet the statutory deadline of November 15, 2000. In 2001 Sierra Club filed suit in district court to compel timely compliance. *Sierra Club v. Whitman*, No. 01-1558, (D.D.C. filed July 18, 2001). EPA responded with an argument that such a suit was an inappropriate remedy for any omissions in its fulfillment of its § 112(c)(6) duties. Rather, it pointed to the declaration it had filed with the court saying that it intended, once it completed emissions standards for remaining source categories, to "issue a notice that explains how it has satisfied the requirements of [§] 112(c)(6) in terms of issuing standards for source categories that account for the statutory thresholds identified in [§] 112(c)(6)." It assured the court that that action, like any other final agency action, would be subject to review in this court.

The district court accepted EPA's view, and set a remedial deadline for EPA to complete its obligations under § 112(c)(6), but refused to identify the legal standards required by that section, finding instead that the D.C. Circuit was "the exclusive forum for substantive review of EPA regulations promulgated under [§] 112 of the Clean Air Act." *Sierra Club v. Johnson*, 444 F. Supp. 2d 46, 60 (D.D.C. 2006). On EPA's motion, the district court extended the deadlines announced in *Johnson* "a number" of times, and

ultimately ordered EPA to comply with its statutory deadline by February 21, 2011. *Sierra Club v. Jackson*, No. 01-1537, 2011 WL 181097 at \*1, \*14 (D.D.C. January 20, 2011).

EPA honored that court deadline in March 2011 by issuing the Determination challenged here. The Determination declared that the agency "has completed sufficient standards to meet the 90 percent requirement" under § 112(c)(6). 76 Fed. Reg. 15308/1 (Mar. 21, 2011). The Determination also referred to an accompanying memorandum that "document[s] the actions the Agency has taken to meet these requirements."

Sierra Club petitions for review of EPA's Determination. It claims that EPA's announcement that it has satisfied its obligations under the statute is unreasonable, arbitrary, capricious, and otherwise unlawful. Sierra Club also argues that the Determination is a legislative rulemaking subject to the notice-and-comment requirements set forth in § 553 of the APA, and invalid for failure to comply with those requirements.

EPA naturally resists Sierra Club's arguments on the merits, but also argues that we lack jurisdiction to resolve this matter for two alternative reasons. First, it claims a want of standing. Second, it argues that Sierra Club's challenges are untimely under § 307 of the CAA, 42 U.S.C. § 7607, since the suit lags some of the regulations referenced in the Determination by more than the 60 days allowed by § 307—lags those regulations, in fact, by many years. There is, besides, another threshold issue—the question whether the Determination was a "final" agency action.

6

* * *

*Standing*. EPA attacks Sierra Club's standing with the argument that "[a]lthough Sierra Club asserts that its members are harmed by emissions of [§] 112(c)(6) HAPs from certain source categories, . . . it provides no evidence that the emission standards it discusses in its brief fail to effectively control the [§] 112(c)(6) HAPs." Respondent's Br. at 23. Accordingly, it says, Sierra Club cannot show, as it must, that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted). EPA seems to suggest that Sierra Club's complaint relates solely to whether the standard-setting rules at issue explicitly *mention* § 112(c)(6), saying that petitioner has offered no "basis to believe that, if EPA were forced to revisit those emission standards and set numeric limitations specifically naming the [§] 112(c)(6) HAPs, the resulting level of control would be any more stringent . . . ." Respondent's Br. at 23-24.

This argument misconceives the nature of Sierra Club's complaint. Sierra Club argues that despite EPA's statutory obligations, it has yet to set emission standards for two types of § 112(c)(6) HAPs, and has set standards for another type of HAPs "for sources that account for far less than ninety percent of aggregate emissions" of that type. Petitioner's Br. at 27. The Club seeks a vacatur of the Determination so that, before any such determination becomes final, it can make its case directly to EPA as to why the agency's conclusion that it has met the court-ordered deadline for all three types of HAPs is erroneous and, relatedly, why the statute compelled EPA to regulate the HAPs to which Club members are exposed more stringently than the agency has already purported to do. If correct on the merits, as we must assume for standing purposes, such a challenge presents a clearly redressable

injury: some Sierra Club members unquestionably live within zones they claim are exposed to § 112(c)(6) HAPs, and our vacatur will require EPA, consistent with the district court's deadline order, to entertain and respond to the Club's claims about the necessary scope and stringency of the standards.

Having shown its members' redressable concrete interest, Sierra Club can assert violation of the APA's notice-and-comment requirements, as those procedures are plainly designed to protect the sort of interest alleged. As to such requirements, Sierra Club enjoys some slack in showing a causal relation between its members' injury and the legal violation claimed. Its position is similar to that of a party "living adjacent to the site for proposed construction of a federally licensed dam . . . [who] challenge[s] the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered." *Lujan*, 504 U.S. at 572 n.7. Moreover, as to sources for which EPA set standards for § 112(c)(6) HAPs without purporting to do so, Sierra Club's claim that the standards did not necessarily comply with § 112(c)(6)—the merits of which, again, we must assume—is potentially redressable by compelling EPA to align the standards set with § 112(c)(6)'s mandate.

*Timeliness*. EPA does not deny that Sierra Club filed its present petition within 60 days of the issuance of the Determination. Rather, it says that Sierra Club is using the present suit as a back door for attacking long past rulemakings. But Sierra Club's contention here is that EPA's previous rulemakings do not satisfy the agency's obligations under § 112(c)(6) in part because some of these previous regulations did not, on their face, purport to carry out that paragraph's demands. Sierra Club claims that, with the Determination, EPA is unlawfully shoehorning previous

rulemakings into the service of its argument that it had completed its obligations under § 112(c)(6). If Sierra Club is correct—a question on which we express no opinion—the agency action Sierra Club challenges is only the Determination, which (in its view) repurposed previous rulemakings to satisfy EPA's § 112(c)(6) obligations. Sierra Club's challenge is not only timely but could not be brought at all until after EPA identified the rules that it believed satisfied its responsibilities under § 112(c)(6).

*Finality*. Neither party disputes that the Determination in question is a final decision for purposes of the APA. We have held, however, that § 307's provision for review of "final action" by the agency imposes a jurisdictional requirement. *Nat'l Env'l Dev. Ass'n's Clean Air Proj. v. EPA*, 686 F.3d 803, 808 (D.C. Cir. 2012). Cf. *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) (distinguishing between "claims processing rules" and jurisdictional barriers). In any event, the Determination easily satisfies the familiar two-part inquiry into an agency decision's finality:

> First, the action under review "must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Second, the action must "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id*. at 178.

*Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005) (some internal citations and quotation marks omitted).

The first requirement is satisfied with unusual clarity, as the whole purpose of the Determination is to ring down the

curtain on EPA's § 112(c)(6) activities. See 76 Fed. Reg. 15,308/1. Nor can there be a question that "legal consequences will flow" from the Determination. EPA has declared, for the first time, that it has fully accomplished the listing of sources and promulgation of standards required by § 112(c)(6). Most obviously as to sources, but also quite clearly as to standards never before pegged to § 112(c)(6), EPA purports to close off any legal claim that it has fallen short of compliance with § 112(c)(6).

Indeed, in the deadline suit before the district court, EPA based its successful response on the premise that this very Determination would both issue and be a final agency action reviewable in this Court. See *supra* 4-5.

* * *

Finding that we have jurisdiction, we turn to the question whether the Determination constitutes a legislative rulemaking that cannot be issued without first being subject to notice and comment under § 553 of the APA. We agree with Sierra Club that it does. Because this conclusion forces a remand under which the parties can develop a record that will render EPA's legal and technical decisions more transparent and thereby facilitate substantive review (and perhaps moot some or all of the parties' dispute), we do not reach Sierra Club's arguments on the substance of the Determination or express the slightest opinion as to their merit.

We have generally termed the category of rules subject to notice-and-comment requirements as "legislative rules." *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 34 (D.C. Cir. 2005). As will often be the case where an agency action is clearly final, the question whether the Determination "is a legislative rule that required notice and comment[] is easy." *Natural*

*Res. Def. Council v. EPA*, 643 F.3d 311, 320 (D.C. Cir. 2011). The Determination having declared the end not only of its multi-decade effort of listing and delisting sources subject to regulation under § 112(c)(6), but also of any further duty to issue § 112(c)(6) standards, it clearly purports to bar further demands for additional source-listing or standard-setting. (This closure effect is subject, perhaps, to petitions for modification based, for example, on claims of changed circumstances. See, e.g., *RSR Corp. v. EPA*, 102 F.3d 1266, 1267 (D.C. Cir. 1997) (discussing the rule first announced in *Geller v. FCC*, 610 F.2d 973 (D.C. Cir. 1979), which provided an exception to the timeliness rule in cases of "changed circumstances giving rise to a new cause of action beyond the statutory period for review") (internal citation omitted).)

EPA cites *Independent Equipment Dealers Association v. EPA*, 372 F.3d 420 (D.C. Cir. 2004), to support its argument that the Determination is not a legislative rule. Far from it. In deciding that the agency communication at issue was not a legislative rule, we emphasized that it "tread no new ground [and] left the world just as it found it." *Id.* at 428 (then-Judge Roberts). The Determination here does precisely what the agency action in *Independent Equipment Dealers* did not. It tread new ground by taking previous rulemakings—which EPA had promulgated without any evident goal of satisfying its § 112(c)(6) obligations—and repurposing them to satisfy § 112(c)(6). Because the Determination manifests a new yet final agency position on its compliance with § 112(c)(6), it is a legislative rulemaking subject to § 553's notice-and-comment requirements.

We repeat, of course, that nothing we say should be taken as ruling on Sierra Club's substantive claims.

\* \* \*

We vacate the Determination and remand to EPA to fulfill the notice-and-comment requirements of § 553 of the APA.

*So ordered.*

KAREN LECRAFT HENDERSON, *Circuit Judge*, concurring in the judgment:

Although I join in the judgment vacating EPA's "Determination," 76 Fed. Reg. 15,308 (Mar. 21, 2011), I write separately because I believe that Article III standing is far from certain.

"Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies.' " *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597 (2007). By limiting the jurisdiction of federal courts to the consideration of cases and controversies, the standing doctrine ensures that the judiciary does not spill the banks of its Article III authority. *Allen v. Wright*, 468 U.S. 737, 750–51 (1984); *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1289 (D.C. Cir. 2007). Because the doctrine implicates this fundamental caution about the judiciary's constitutional role, we address standing with considerable care. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

A party seeking to invoke the power of an Article III court must establish the "irreducible constitutional minim[a] of standing," to wit, injury in fact, causation and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). I agree with my colleagues that Sierra Club establishes an injury in fact which, assuming its success on the merits, is caused by EPA's failure to engage in the notice-and-comment procedures required by the Administrative Procedure Act (APA), 5 U.S.C. § 553. I suspect, however, that today's decision will most likely provide no relief for that injury.

Section 112(c)(6) of the Clean Air Act (Act) requires EPA to assure that "not less than 90 per centum of the aggregate emissions of each such pollutant are subject to

standards under subsection (d)(2) or (d)(4)." 42 U.S.C. § 7412(c)(6). That is *all* it requires. EPA is under no obligation, statutory or otherwise, to inform anyone that it has satisfied the requirements of section 112(c)(6). The issuance of the Determination was purely voluntary, amounting to little more than a public service message.[1]

Given that EPA was not required to issue the Determination, I am doubtful our decision will redress Sierra Club's injury. My colleagues correctly note that a party alleging a procedural injury is not required to show that the agency's decision would have been different had it adhered to the APA. *Cnty. of Delaware, Pa. v. Dep't of Transp.*, 554 F.3d 143, 147 (D.C. Cir. 2009) ("[A] litigant 'who alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he had received the procedure the substantive result would have been altered. All that is necessary to show is that the procedural step was connected to the substantive result.' " (quoting *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 94–95 (D.C. Cir. 2002)). Even so, I cannot escape the conclusion that redress is most likely "merely speculative" as opposed to "likely." *Lujan*, 504

---

[1] This conclusion also implicates another jurisdictional concern, viz., whether the Determination was "final action" within the meaning of section 307 of the Act. *See Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA*, 686 F.3d 803, 808 (D.C. Cir. 2012). Because it is uncertain that the Determination accomplishes anything, it is also unclear that it is "one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quotation marks omitted). Nevertheless, I accept what I believe to be my colleagues' conclusion that the Determination has altered the legal landscape by "taking previous rulemakings . . . and repurposing them to satisfy § 112(c)(6)." Maj. Op. 10.

U.S. at 561 (quotation marks omitted). Because EPA's compliance with section 112(c)(6) does not rest on the issuance of the Determination, it is likely that, on remand, EPA will simply abandon the Determination rather than undertake the expensive and cumbersome notice-and-comment procedures imposed by section 553 of the APA. The upshot would be that EPA will continue to decline to issue regulations and Sierra Club's alleged injury will remain unredressed.[2]

---

[2] In its abbreviated standing discussion, my colleagues appear to conflate the two distinct standing prongs of injury in fact and redressability by stating without explaining that Sierra Club suffers a "clearly redressable injury[] given that some Sierra Club members live within zones they claim are exposed to § 112(c)(6) HAPs." Maj. Op. 6. Exposure to section 112(c)(6) HAPs plainly constitutes an injury in fact. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000). And such injury is obviously redressable by an order to promulgate regulations. But that is not what our vacatur order accomplishes. Our instruction to EPA is merely that, before it promulgates a notice of this kind, it must do so pursuant to the APA's notice-and-comment procedures. EPA may simply choose to withdraw the notice altogether and rest on its internal conclusion that it has satisfied section 112(c)(6), forcing Sierra Club to seek some other form of redress.

Similarly, the dicta hypothetical discussed in the *Lujan* footnote on which my colleagues rely is distinguishable. See Maj. Op. 5–6 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992)). They compare Sierra Club's alleged procedural deprivation to a hypothetical agency's failure to prepare an environmental impact statement before construction of a federally licensed dam. An adjacent landowner could challenge the agency's failure without showing that his input into the statement's preparation would result in the denial of the license. *Lujan*, 504 U.S. at 572 n.7. But as Justice Scalia noted, the environmental

My colleagues believe that the "deadline suit" in the district court, apparently still pending, obviates my concern. In a footnote included in its district court brief in that case, EPA stated its intention to issue a notice explaining that it had satisfied its section 112(c)(6) obligations. Maj. Op. 4 (quoting Def.'s Mem. in Supp. of Cross-Mot. for Summ. J. on Remedy 19 n.16, *Sierra Club v. Johnson*, No. 01-1537 (D.D.C. Jun. 13, 2005)). The district court ordered EPA to comply with the requirements of section 112(c)(6) but declined either to instruct EPA on how to comply or to review the substance of any regulations relied upon by EPA to satisfy section 112(c)(6), concluding that both actions were beyond its jurisdiction. *Sierra Club v. Johnson*, 444 F. Supp. 2d 46, 59–60 (D.D.C. 2006).[3] The district court did not instruct EPA to

---

impact statement is a procedural requirement. *Id.* at 572. Thus, in order to proceed with licensure and construction, the agency *must* allow the landowner to make known his concerns. But here, because the Determination is not required by statute, EPA may give up the Determination entirely and at the same time cease promulgating section 112(c)(6) regulations. The distinction is thus that the hypothetical agency in *Lujan* may not accomplish its goal—licensure or construction—without at least knowing the injured party's concerns. By abandoning the Determination, EPA may accomplish its goal—no promulgation of additional regulations pursuant to section 112(c)(6)—without regard to Sierra Club's concerns.

[3] My colleagues make much of the fact that EPA assured Sierra Club and the district court that it intended to issue the Determination, which would be reviewable in this Court. Maj. Op. 4. This seems of little consequence to me. First, the district court did not rely on EPA's assurance to reach its ultimate conclusion that it could not review the standards on which EPA relied to satisfy section 112(c)(6) because it lacked jurisdiction. *Johnson*, 444 F. Supp. 2d at 59–60. Second, EPA cannot stipulate to the finality of the Determination because finality implicates our jurisdiction,

issue the Determination but merely to "assure that sources accounting for ninety percent of the aggregate emissions of certain persistent and bioaccumulative hazardous air pollutants are subject to emission standards with respect to such pollutants." Order at 2, *Sierra Club v. Johnson*, No. 01-1537 (D.D.C. Mar. 31, 2006).

My colleagues conclude that "our vacatur order will require EPA, consistent with the District Court's deadline order, to entertain and respond to the Club's claims about the necessary scope and stringency of the standards." Maj. Op. 6–7. I am unconvinced. If EPA declines to issue the Determination, Sierra Club will presumably return to district court to enforce the deadline order, as it has done before. *See* Mot. to Enforce Order of Jan. 20, 2011, *Sierra Club v. Jackson*, No. 01-1537 (D.D.C. Aug. 3, 2011). EPA will presumably defend against enforcement with the Technical Memorandum (prepared in order to support the Determination) showing how it has satisfied the district court's order. *See* Maj. Op. 5. If the district court is correct about its jurisdiction under the Act, it cannot review the standards on which EPA relies. *See Johnson*, 444 F. Supp. at 59–60. Nor can we, because judicial review of the standards that Sierra Club previously failed to challenge would violate the sixty-day deadline imposed by section 307(b)(1) of the Act. 42 U.S.C. § 7607(b)(1). The proper recourse for Sierra Club will then be to petition for reconsideration of those standards or for a new rulemaking. *See Oljato Chapter of Navajo Tribe v. Train*, 515 F.2d 654, 666 (D.C. Cir. 1975);

which my colleagues acknowledge we must resolve ourselves. *See* Maj. Op. 8; *see also Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to 'satisfy itself . . . of its own jurisdiction . . .' even though the parties are prepared to concede it." (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)).

*see also RSR Corp. v. EPA*, 102 F.3d 1266, 1270 (D.C. Cir. 1997). If, after consideration of Sierra Club's comments, EPA denies the petition, we may review the denial and—if persuaded—grant Sierra Club the relief it seeks. Although the administrative petition process—like my colleagues' hoped-for result arising from remand—will enable Sierra Club to make known its concerns to EPA, I doubt that EPA will permit Sierra Club to short circuit that process by reissuing the Determination after notice and comment. Remand is thus unlikely to provide Sierra Club redress.

The possibility that an agency will abandon a rulemaking after we vacate and remand a procedurally deficient rule exists, of course, whenever we impose this remedy. *See, e.g., Chamber of Commerce of U.S. v. U.S. Dep't of Labor*, 174 F.3d 206 (D.C. Cir. 1999) (vacating OSHA rule for lack of notice-and-comment, which rule OSHA subsequently abandoned); Orly Lobel, *Interlocking Regulatory and Industrial Relations: The Governance of Workplace Safety*, 57 ADMIN. L. REV. 1071, 1124 (2005) (describing OSHA's abandonment of rule after vacatur); *see also Natural Res. Def. Council v. EPA*, 489 F.3d 1250, 1265 (D.C. Cir. 2007) (noting that agency may "abandon its initial rule" after vacatur); Kristina Daugirdas, Note, *Evaluating Remand Without Vacatur: A New Judicial Remedy for Defective Agency Rulemakings*, 80 N.Y.U. L. REV. 278, 279 (2005). Because vacating the Determination leaves unstated but intact EPA's underlying conclusion that it has satisfied section 112(c)(6), I expect that abandonment will occur here. We have never, however, required a petitioner challenging agency action to show that the agency will not abandon the rulemaking after vacatur and remand—nor could we—and I would not seek to impose that requirement here. Accordingly, I concur in the judgment of the Court.