# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued February 10, 2017          Decided July 18, 2017

No. 15-1246

SIERRA CLUB AND CALIFORNIA COMMUNITIES
AGAINST TOXICS,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY AND
E. SCOTT PRUITT, ADMINISTRATOR,
U.S. ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENTS

---

On Petition for Review of Final Action of the
United States Environmental Protection Agency

---

*Neil Gormley* argued the cause for petitioners. With him on the briefs was *James S. Pew*.

*Eileen T. McDonough*, Attorney, U.S. Department of Justice, argued the cause for respondents. With her on the brief was *John C. Cruden*, Assistant Attorney General, was on the brief.

*Jeffrey A. Knight* and *Bryan M. Stockton* were on the brief for *amicus curiae* Coalition for Clean Air Implementation in support of respondents.

Before: ROGERS and MILLETT, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Sierra Club and California Communities Against Toxics (collectively "Sierra Club") petition for review of the Environmental Protection Agency's ("EPA") determination that EPA had satisfied its responsibilities under 42 U.S.C. § 7412(c)(6) to establish "maximum achievable control technology" ("MACT") standards for emissions of certain hazardous air pollutants ("HAPs"). Petitioners contend that as to three of the HAPs, EPA arbitrarily relied upon standards set previously to regulate other emissions without justifying its decision to treat those previously regulated emissions as "surrogates" for the § 7412(c)(6) HAPs. EPA moves the court to dismiss the petition as untimely and disputes it substantively. Because we conclude that the petition is not untimely and that EPA did not adequately respond to petitioners' comments raising the issues concerning the use of surrogacy in the administrative proceedings, we deny the motion to dismiss and order the matter remanded to EPA for further proceedings.

## I.  BACKGROUND

Congress enacted the current version of § 7412 as part of the Clean Air Act Amendments of 1990 to further its original intent, "to reduce hazardous air pollutants." *See Sierra Club v. EPA*, 353 F.3d 976, 979 (D.C. Cir. 2004). In general, that section requires MACT standards for "major source[s]" of air pollutants, that is to say, those with potential to emit ten tons or more of a single HAP or twenty-five tons or more of a combination of HAPs per year. *See* 42 U.S.C. § 7412(a)(1)

(describing major sources); *see also* § 7412(d). Congress singled out a category of specific pollutants of a particularly hazardous nature for special treatment under § 7412(c)(6). With respect to those pollutants, Congress required EPA, as pertinent to this petition, to regulate emissions of seven specific hazardous air pollutants more stringently than the statute required for pollutants in general. Specifically, EPA was required to list categories and subcategories of sources of such HAPs accounting for at least 90% of the aggregate emissions of each. *See* § 7412(c)(6). EPA was further required to establish and subject these listed sources to MACT standards, *see id.*, even if it would have otherwise had discretion to apply a less-stringent standard to any area sources on the list, *see* § 7412(d)(5). The statute specifically required EPA to conclude these duties by November 15, 2000. § 7412(c)(6).

Much activity followed, both administratively and in litigation. Although petitioners devote much ink to a rehash of the years of proceedings, we will describe the intervening events briefly, with only enough detail to support our decision in the present controversy. As mentioned, in addition to the creation of MACT standards, § 7412 required EPA to perform the preliminary duty of listing sources of the seven specific HAPs. *See* § 7412(c)(6). "In 1998 EPA published its conclusion that it had satisfied" that preliminary duty. *Sierra Club v. EPA*, 699 F.3d 530, 531 (D.C. Cir. 2012). Sierra Club petitioned this court for review of that determination. We dismissed the petition as premature, determining that the Clean Air Act "precluded review of the agency's source-listing under § [7412](c)(6) until the agency had issued emissions standards thereunder . . . ." *Id.* (explaining *Sierra Club v. EPA*, No. 98-1270, 1998 WL 849408, at *1 (D.C. Cir. Nov. 24, 1998), in which we dismissed the petition, relying on 42 U.S.C. § 7412(e)(4)).

Thereafter, when EPA failed to meet the November 2000 statutory deadline for promulgating the (c)(6) list and MACT standards, Sierra Club brought a district court action to compel compliance with the statute, which ultimately led to our 2012 decision in *Sierra Club*. After the district court had ordered the agency to comply with its statutory duties, EPA issued a determination that it had "completed sufficient standards to meet the 90 percent requirement" of § 7412(c)(6). *Sierra Club*, 699 F.3d at 532 (citation omitted). Sierra Club petitioned for review. Then, as now, EPA moved for dismissal of the petition as untimely. We disagreed. *Id.* at 532-34. We also concluded that EPA had not complied with its duty to provide the period of notice and comment. *Id.* at 534-35. We vacated and remanded for further proceedings. *Id.* at 535.

Thereafter, EPA began administrative proceedings which ultimately led to the final rule under review. More specifically, at the time of our remand, the order that Sierra Club had obtained from the district court was still outstanding. Sierra Club moved the district court to enforce its prior order with respect to several of the § 7412(c)(6) HAPs. *Sierra Club v. McCarthy*, 61 F. Supp. 3d 35, 38-39 (D.D.C. 2014). The district court, perceiving that EPA had not complied with its prior order, "direct[ed] EPA to initiate a process of notice and comment rulemaking before it reissues or, after consideration of the comments submitted, reconsiders or modifies its Determination." *Id.* at 41. The court required that the final action "include a statement explaining its basis" and required EPA to "respond to the comments that it receive[d]." *Id.* Subsequently, EPA published the notice of rulemaking and final rulemaking that Sierra Club contests as arbitrary and capricious in this case.

Expressing its intent to comply with the district court's order, EPA issued this notice of proposed rulemaking entitled

"Completion of Requirement to Promulgate Emissions Standards," 79 Fed. Reg. 74,656 (Dec. 16, 2014) ("Proposed Determination"). The notice expressly provided for comments, as required in the district court's 2014 order. Sierra Club filed comments. As pertinent to the present controversy, EPA's proposed rule included three HAPs upon which Sierra Club's comments and present petition focus: polychlorinated biphenyls ("PCBs"), polycyclic organic matter ("POM"), and hexachlorobenzene ("HCB").

As to each of the three HAPs, Sierra Club contends that EPA's final rule does not comply with the requirements of § 7412(c)(6) that as to every pollutant covered by the section, EPA must provide sufficient standards for the categories and subcategories of "sources accounting for not less than 90 percent of the aggregate emissions of each such pollutant . . . ." 42 U.S.C. § 7412(c)(6). In terms of the issues preserved by petitioners for review in this proceeding, Sierra Club's main argument is that the agency improperly relied on "surrogates." That is to say, rather than issuing new specific standards, the agency relied on previously set emission limits for another hazardous air pollutant or compound, "which serves as a surrogate for the targeted section [7412](c)(6) [pollutant]." Proposed Determination, 79 Fed. Reg. at 74,677. After receiving petitioners' comments on its proposed rule, EPA published the final rule now under review: "Completion of Requirement to Promulgate Emissions Standards," 80 Fed. Reg. 31,470 (June 3, 2015) (codified at 40 C.F.R. pt. 63) ("Final Determination").

Sierra Club filed the present petition. EPA moved to dismiss the petition as untimely. For the reasons set forth below, we deny the motion to dismiss and grant remand for further proceedings.

## II. ANALYSIS

### A. Standard of Review

EPA's final rule is subject to judicial review under 42 U.S.C. § 7607(b)(1). We review such final rules under the standards of the Administrative Procedure Act, 5 U.S.C. § 706(2), and will set the rule aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). Insofar as the agency has interpreted the Clean Air Act, we apply the standard of *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984). That is, if "the intent of Congress is clear," that is the end of the analysis. *Id.* at 843-45. If it is ambiguous, then we ask if the agency's interpretation is reasonable, and if so, we uphold the agency's construction. *Id.* In the present controversy, petitioners' challenge is directed to the decisions of EPA, not primarily to its interpretation of the statute.

### B. Timeliness

EPA's motion to dismiss is based on the argument that Sierra Club's objections to the standards used in the final determination are actually challenges to "the *adequacy* of the pre-existing standards," that is, the MACT standards with respect to the surrogate pollutants. Resp'ts' Br. at 37. EPA relies on the judicial review provision of the Clean Air Act, which provides that any petition for review of the Administrator's promulgation of standards "shall be filed within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register . . . ." 42 U.S.C. § 7607(b)(1). We note that the statute further provides an exception "if such petition is based solely on grounds arising after such sixtieth day," and that any such petition "shall be filed within sixty days after such grounds arise." *Id.* For reasons

similar to those set forth by us in *Sierra Club v. EPA*, 699 F.3d 530, we agree with petitioners.

In the prior decision, we held that "[i]f Sierra Club is correct . . . the agency action Sierra Club challenges is only the Determination, which (in its view) repurposed previous rulemakings to satisfy EPA's § [7412](c)(6) obligations," making the challenge "timely" as it "could not be brought at all until after EPA identified the rules that it believed satisfied its responsibilities under § [7412](c)(6)." *Sierra Club*, 699 F.3d at 534.

The same reasoning applies here. Sierra Club again challenges the present determination that EPA had satisfied § 7412(c)(6) through its promulgation of MACT standards for surrogate emissions rather than for the listed (c)(6) HAPs themselves. That issue could not be reviewed prior to the issuance of the final rule now before us. Petitioners could not raise those objections until the final rule employing the surrogates was released. Petitioners do not, for example, attack the adequacy of the listing or standards with respect to any surrogate pollutant, but only the repurposing of standards for satisfaction of the § 7412(c)(6) requirements with respect to PCBs, POM, and HCB. It is therefore clear that our reasoning in *Sierra Club* applies equally to the present case. Sierra Club's present challenge to the interaction of the surrogacy decisions with the 90% (c)(6) requirements is timely, and the motion to dismiss will be denied.

## C. The Substantive Petition

We wish to make clear at the outset that the question before us is the narrow one of the adequacy of EPA's justification for the use of surrogates. Insofar as the parties characterize this petition as a challenge to the achievement of the 90%

requirement, that question rises or falls with surrogacy. EPA has published a purported 90% listing. However, the adequacy of the MACT standards for the 90% requirement relies upon the propriety of the use of the surrogates. As to those issues, petitioners' challenge is timely. This does not determine whether it is meritorious. Petitioners raised their objections to the use of the surrogates in comments. We have frequently held in various contexts that, in APA review, we will often find agency decisions arbitrary or capricious where the agency has failed to respond to major substantive comments. *See Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) (citations omitted); *see also NRDC v. EPA*, 859 F.2d 156, 188-89 (D.C. Cir. 1988). In this case, the agency's responses to the comments consisted principally of the same timeliness argument we rejected above. Therefore, if we conclude that the substantive comments raised meritorious issues unanswered by EPA, then we must remand for further proceedings.

We have in the past approved the use of surrogates by EPA. We have ruled that "EPA may use a surrogate to regulate hazardous pollutants if it is 'reasonable' to do so." *Nat'l Lime Ass'n v. EPA*, 233 F.3d 625, 637 (D.C. Cir. 2000) (citation omitted). Therefore, Sierra Club does not argue, nor do we hold, that surrogates may not be used. The question is whether the current use of surrogates is reasonable.

This Court has identified three potential tests for evaluating the sufficiency of a surrogacy designation. *National Lime* "established a three-part analysis for determining whether the use of [a particular surrogate] for HAPs is reasonable . . . ." *Sierra Club*, 353 F.3d at 984. That three-part test requires EPA to determine if (1) the relevant hazardous air pollutant is invariably present in the proposed surrogate; (2) control technologies for the proposed surrogate indiscriminately capture the relevant HAP along with other pollutants; and (3) the control

of the surrogate is the only means by which facilities achieve reductions in emissions of the hazardous air pollutant. *See id.*; *see also U.S. Sugar Corp. v. EPA*, 830 F.3d 579, 628 (D.C. Cir. 2016) (The reasonableness inquiry "requires the surrogate's emissions to share a close relationship with the emissions of the [target hazardous air pollutant]."); *Mossville Envtl. Action Now v. EPA*, 370 F.3d 1232, 1242 (D.C. Cir. 2004) (The reasonableness inquiry "merely requires 'that there [be] a correlation between [the surrogate and the target hazardous air pollutants].'" (quoting *Nat'l Lime*, 233 F.3d at 639)). Applying those standards, in *Sierra Club*, we held that the use of a surrogate was reasonable. *Sierra Club*, 353 F.3d at 984-85. Even if the surrogates in the present case are different than a specific surrogate considered in *Sierra Club* or in *National Lime*, the three-part test is nonetheless instructive.

In this context, as in the prior cases, EPA must demonstrate the reasonableness of the use of a particular surrogate in a specific context. Although EPA provided some explanation of the surrogacy relationships in this case, *see* Proposed Determination, 79 Fed. Reg. at 75,677-80, EPA failed to respond adequately to comments disputing those explanations. In the proposed determination, EPA admits that "in some standards promulgated prior to [its] development of the baseline emissions inventory . . . , the EPA did not always explain the surrogacy relationship." Proposed Determination, 79 Fed. Reg. at 74,678; *see also* Final Determination, 80 Fed. Reg. at 31,471-72 (final determination noting that proposed determination explained the surrogate standards). In the final determination, it then proceeds to provide brief information on the newly "explained" surrogacy relationships but does not substantively respond to comments on those purported explanations, urging instead that the relevant standards had not been reopened and thus could not be substantively challenged. Despite comments urging that EPA's surrogacy claims needed additional analysis

and data in support to establish their reasonableness, EPA responded that such comments "mischaracterize[d]" its "proposed determination," as "the legitimacy of the standards" it relied on is "far outside the scope of the proposed" determination. Final Determination, 80 Fed. Reg. at 31,477. Thus, EPA did not need "to respond to those comments." *Id.*

EPA cannot hide behind the established nature of the standards it uses when it applies new surrogacy relationships. By admitting that "the proposed determination in some instances clarifies the surrogacy relationship," EPA makes irrelevant its point that "the proposal does not discuss or attest to the substance of the standards previously promulgated." *See* Final Determination, 80 Fed. Reg. at 31,480. In its admission, EPA belies its own claim that the determination was "only . . . the mathematical and technical basis for the EPA's calculation." *Id.* Providing brand-new clarification of some surrogacy relationships necessarily rendered it substantive and EPA's failure to explain sufficiently these newly "clarified" relationships and respond to the associated comments dooms the current determination. While the parties make other arguments, all are either restatements of the propositions contained in the major issue or do not warrant separate discussion. We wish to make clear that we are not holding that EPA's decision is substantively incorrect. Indeed we express no opinion on that subject. We simply remand the matter to EPA for further proceedings, which should include the explanations omitted from the present determination.

CONCLUSION

For the reasons set forth above, we conclude that EPA failed to explain its proposed reliance on surrogates and thus its determination does not satisfy 42 U.S.C. § 7412(c)(6). We therefore hold that Sierra Club's timely petition for review is

*Granted in part*.