# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 9, 2015      Decided December 18, 2015

No. 13-1283

DALTON TRUCKING, INC., ET AL.,
PETITIONERS

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY AND
GINA MCCARTHY, IN HER OFFICIAL CAPACITY AS
ADMINISTRATOR OF THE UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,
RESPONDENTS

CALIFORNIA AIR RESOURCES BOARD,
INTERVENOR

———

Consolidated with 13-1287

———

On Petitions for Review of Final Action of the
United States Environmental Protection Agency

———

*Theodore Hadzi-Antich* argued the cause for petitioners. With him on the joint briefs were *M. Reed Hopper* and *Lawrence J. Joseph*.

*Joshua M. Levin*, Senior Trial Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the

brief was *John C. Cruden*, Assistant Attorney General. *Michael J. Horowitz*, Attorney Advisor, U.S. Environmental Protection Agency, entered an appearance.

*Ross H. Hirsch*, Deputy Attorney General, Office of the Attorney General for the State of California, argued the cause for intervenor. With him on the brief were *Kamala D. Harris*, Attorney General, and *Robert W. Byrne*, Senior Assistant Attorney General.

Before: GARLAND, *Chief Judge*, and EDWARDS and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: This case involves consolidated petitions for review filed by Dalton Trucking, Inc., et al. (hereinafter "Dalton Trucking") and American Road and Transportation Builders Association ("ARTBA"), challenging a final decision by the Environmental Protection Agency ("EPA"). EPA's contested decision authorized California regulations intended to reduce emissions of particulate matter and oxides of nitrogen from in-use nonroad diesel engines. Simultaneous to filing its petition for review in this court, Dalton Trucking sought review of the same EPA decision in the United States Court of Appeals for the Ninth Circuit. ARTBA did not separately seek review in the Ninth Circuit, but instead sought and was granted leave to intervene on Dalton Trucking's behalf.

Believing that the D.C. Circuit is the proper venue for Petitioners' challenges, EPA moved to dismiss or, alternatively, transfer Petitioners' Ninth Circuit action to this court. The Ninth Circuit declined to rule on EPA's motion,

holding it in abeyance pending a ruling by this court as to whether venue is proper in the D.C. Circuit. Before this court, Dalton Trucking and ARTBA argue that the Ninth Circuit is the proper venue for their challenges and seek dismissal or transfer of their petitions for review.

Venue in this case is governed by section 307(b)(1) of the Clean Air Act ("CAA" or "Act"). *See* 42 U.S.C. § 7607(b)(1). Pursuant to section 307(b)(1), venue over the challenges to the EPA action at issue lies exclusively with this court only if (1) the final action taken by EPA is "nationally applicable" or (2) EPA found that its final action was based on a determination of "nationwide scope or effect" and it published this finding. *See id.*

Petitioners claim that because EPA's decision does not satisfy either of the statutory avenues for filing in the D.C. Circuit, venue is not proper in this court. We agree. We therefore dismiss the petitions for review.

## I. BACKGROUND

Section 209(e) of the Clean Air Act generally preempts states from adopting standards relating to the control of emissions from in-use nonroad diesel engines. *See* 42 U.S.C. § 7543(e)(1). California, however, may adopt emissions standards for in-use nonroad diesel engines if it applies for and receives a waiver of federal preemption from EPA. *See* 42 U.S.C. § 7543(e)(2)(A).

To receive a waiver of federal preemption, California is required to determine that its standards "will be, in the aggregate, at least as protective of public health and welfare as applicable Federal Standards." *Id.* Following such a determination, EPA must authorize a waiver application

unless EPA finds that (1) California's determination was arbitrary and capricious, (2) "California does not need such California standards to meet compelling and extraordinary conditions," or (3) "California standards and accompanying enforcement procedures are not consistent with [section 209 of the Act.]" *Id*. § 7543(e)(2)(A)(i)-(iii). Once EPA authorizes California standards, other states may adopt and enforce identical provisions as their own, subject to certain conditions. *Id*. § 7543(e)(2)(B); *see also Am. Trucking Ass'ns v. EPA*, 600 F.3d 624, 628 (D.C. Cir. 2010).

In July 2007, the California Air Resources Board, California's air pollution agency, approved regulations to reduce particulate matter and oxides of nitrogen emissions from in-use nonroad diesel engines (hereinafter "Nonroad Fleet Requirements"). As amended, the Nonroad Fleet Requirements apply to persons, businesses, or government agencies owning or operating in California in-use nonroad diesel engines with a maximum horsepower of 25 or greater.

On March 1, 2012, the California Air Resources Board requested that EPA authorize California's Nonroad Fleet Requirements pursuant to section 209(e) of the Act. EPA granted the request. *See* Decision Granting a Waiver of Clean Air Act Preemption ("Nonroad Waiver Decision"), 78 Fed. Reg. 58,090 (Sept. 20, 2013). In its Nonroad Waiver Decision, EPA concluded "that those opposing California's request have not met the burden of demonstrating that authorization for California's Fleet Requirements should be denied based on any of the statutory criteria of section 209(e)(2)(A)." *Id*. at 58,121.

Dalton Trucking filed a petition for review of EPA's Nonroad Waiver Decision in both this court and in the United States Court of Appeals for the Ninth Circuit. *See Dalton*

*Trucking Inc. v. EPA*, No. 13-74019 (9th Cir. Nov. 19, 2013). ARTBA, a nonprofit trade organization that represents the collective interests of the U.S. transportation and construction industries, also filed a petition for review of EPA's Nonroad Waiver Decision in this court. ARTBA additionally sought and was granted leave by the Ninth Circuit to intervene on Dalton Trucking's behalf in the action before that court. In both courts, Petitioners assert that in authorizing California's Nonroad Fleet Requirements, EPA misapplied the statutory requirements of section 209(e) and that EPA's decision was arbitrary and capricious or otherwise not in accordance with law.

EPA filed a motion to have the case before the Ninth Circuit dismissed or transferred to this court. The Ninth Circuit directed that the agency's motion be held in abeyance pending a ruling by this court as to whether Petitioners' challenges were "properly filed" in the D.C. Circuit. Petitioners now contend that venue is not proper in the D.C. Circuit.

## II. ANALYSIS

Section 307(b)(1) of the Clean Air Act, titled "Administrative proceedings and judicial review," provides, in relevant part:

> A petition for review of action of the Administrator in promulgating [certain enumerated nationally applicable actions] or any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of [certain enumerated locally or regionally applicable actions]

> or any other final action of the Administrator under this chapter . . . which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit. Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination.

42 U.S.C. § 7607(b)(1).

Although section 307(b)(1) no where uses the phrase subject matter jurisdiction, in *Harrison v. PPG Industries, Inc*., 446 U.S. 578 (1980), the Supreme Court was clear that the provision confers jurisdiction on the courts of appeals. Once section 307(b)(1) is understood as a jurisdictional provision, it is apparent from its terms that the jurisdiction conferred extends both to "the United States Court of Appeals for the District of Columbia" and to the regional "United States Court of Appeals." It is also apparent from its terms and legislative history, that in addition to conferring subject matter jurisdiction on the Courts of Appeals, section 307(b)(1) is a venue provision. *See Tex. Mun. Power Agency v. EPA*, 89 F.3d 858, 867 (D.C. Cir. 1996) (per curiam); *see also Harrison*, 446 U.S. at 590-91. And in specifying venue, section 307(b)(1) distinguishes between cases that may be filed only in the Court of Appeals for the D.C. Circuit and those that may be filed only in other U.S. Courts of Appeals. *See Tex. Mun. Power Agency*, 89 F.3d at 867. Thus, under section 307(b)(1), subject matter jurisdiction and venue are not coterminous.

Our decisions have not always distinguished between 307(b)(1)'s dual functions. For example, some opinions suggest in dicta that section 307(b)(1) gives this court "exclusive jurisdiction over challenges to final EPA actions," inadvertently suggesting that jurisdiction and venue under section 307(b)(1) are coterminous. *See*, *e.g.*, *Nat. Res. Def. Council v. EPA*, 643 F.3d 311, 317 (D.C. Cir. 2011). Such opinions do not address, no doubt because the parties did not raise the issue, section 307(b)(1)'s undeniable vesting of subject matter jurisdiction in both "the United States Court of Appeals for the District of Columbia" and regional "United States Court of Appeals." Indeed, there are a plethora of decisions from other circuits resolving section 307(b)(1) challenges to final agency actions having only local or regional impact. *See, e.g.*, *Nat. Res. Def. Council, Inc. v. EPA*, 638 F.3d 1183 (9th Cir. 2011); *New York v. EPA*, 133 F.3d 987 (7th Cir. 1998).

In addition, past opinions asserting that section 307(b)(1) confers exclusive jurisdiction on the D.C. Circuit are not easily squared with other decisions in which we have applied section 307(b)(1) as a venue provision. *See, e.g.*, *Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 455-56 (D.C. Cir. 2013) (dismissing a challenge to an EPA action taken under section 307(b)(1) because venue was not proper in the D.C. Circuit); *Util. Air Regulatory Grp. v. EPA*, No. 01-1064, 2001 WL 936362, at 1 (D.C. Cir. July 10, 2001) (same).

Lest there be any confusion going forward, we reiterate what the Supreme Court made clear thirty-five years ago: Section 307(b)(1) is a "conferral of jurisdiction upon the courts of appeals." *Harrison*, 446 U.S. at 593. We stress, however, that section 307(b)(1) is also a venue provision, specifying which types of section 307(b)(1) challenges can be

filed in which federal circuit courts. When a party challenges final actions reviewable under section 307(b)(1), venue is determined as follows:

- Petitions for review of certain enumerated nationally applicable actions and rules "or any other nationally applicable regulations promulgated, or . . . final action taken . . . may be filed only in the United States Court of Appeals for the District of Columbia." 42 U.S.C. § 7607(b)(1).

- Petitions for review of certain enumerated locally or regionally applicable actions "or any other final action . . . which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit." *Id.*

- Petitions for review of "locally or regionally applicable" final actions "may be filed only in the United States Court of Appeals for the District of Columbia if such action is based on a determination of nationwide scope or effect and if in taking such action [EPA] finds and publishes that such action is based on such a determination." *Id.*

*A brief procedural note*: Parties normally may consent to be sued in a court that would otherwise be an improper venue. *See Tex. Mun. Power Agency*, 89 F.3d at 867. And a party's failure to object to venue may waive the issue. *See id*.; *Nat'l Wildlife Fed'n v. Browner*, 237 F.3d 670, 675 (D.C. Cir. 2001). Moreover, it is generally understood that courts of appeals have the "inherent power to transfer cases over which we have jurisdiction, but not venue." *Alexander v. Comm'r of Internal Revenue*, 825 F.2d 499, 502 (D.C. Cir. 1987) (per curiam). Here, because Petitioners preserved their objection to

venue in this circuit (after protecting their right to review by filing in both our circuit and the Ninth Circuit) we need not decide whether this court may *sua sponte* dismiss a petition for review under section 307(b)(1) for lack of venue.

EPA contends that venue is proper in the D.C. Circuit because its Nonroad Waiver Decision is nationally applicable. Alternatively, the agency argues that venue is proper because its decision was based on a determination of nationwide scope and effect, which it found and published. On the record before us, we find that EPA's Nonroad Waiver Decision is not nationally applicable. We also find that EPA neither found that its Nonroad Waiver Decision was based on a determination of nationwide scope or effect nor published such a finding. Therefore, this court is not the proper venue for Petitioners' challenges.

* * * *

EPA makes three arguments in support of its principal contention, which is that its Nonroad Waiver Decision has national applicability. None is persuasive. First, according to EPA, its decision "is a nationally-applicable final action because other States may automatically adopt California's nonroad standards without further EPA review under 42 U.S.C. § 7543(e)." Br. for Respondents at 20; *see also id*. at 27-28. Although it is true that California's Nonroad Fleet Requirements may be adopted and applied by other states, there is no statutory or regulatory requirement that other states follow California's lead. And to date, no other state has. Indeed, EPA offers no compelling evidence to show that it is common practice for other states to adopt California standards following preemption waivers by the EPA.

EPA attempts to paper over the fundamental weakness in its national applicability argument – the complete absence of evidence of any application of the Nonroad Fleet Requirements outside of California – by asserting that it "strains credulity to presume" that Congress would make California standards nationally available for adoption by other states, yet require that EPA decisions authorizing such standards be treated as regionally applicable actions reviewable in the Ninth Circuit and not in the D.C. Circuit. *See* Br. for Respondents at 30. We disagree. In section 307(b)(1), Congress required more than national *availability* to demonstrate that venue lies exclusively in the D.C. Circuit. It required national *applicability*. And that we simply do not have on this record.

Second, the agency argues that EPA's Nonroad Waiver Decision is a nationally applicable action because California's Fleet Requirements will regulate off-road diesel engines and vehicles based outside of California. *See* Br. for Respondents at 20-21. In fact, according to EPA, the majority of affected fleets may be based in neighboring states. *See id.* at 32-33. This argument is inapposite. To determine whether a final action is nationally applicable, "this Court need look only to the face of the rulemaking, rather than to its practical effects." *Am. Rd. & Transp. Builders Ass'n*, 705 F.3d at 456 (citing *NRDC v. Thomas*, 838 F.2d 1224, 1249 (D.C. Cir. 1988)). By their terms, the Nonroad Fleet Requirements authorized by EPA regulate only nonroad engines and vehicles that are owned or operated *in* California. And the Nonroad Waiver Decision, on its face, is not nationally applicable because it is limited to fleets operating in California.

EPA also suggests that the D.C. Circuit is the proper venue for Petitioners' challenges because this court has "consistently treated similar petitions for review as nationally

significant actions reviewable in this court." Br. for Respondents at 28. This is a puzzling argument as the cases cited by EPA neither address venue nor examine whether the final actions at issue were nationally or locally applicable. *See, e.g.*, *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449 (D.C. Cir. 1998); *Motor & Equip. Mfrs. Ass'n v. EPA*, 627 F.2d 1095, 1106 (D.C. Cir. 1979).

EPA's alternative contention – that venue in this circuit is "compelled by [its] published determination that its action would have a nationwide scope or effect," Br. for Respondents at 34 – is a transparent sleight of hand that does not persuade us.

Because, as demonstrated, EPA's Nonroad Waiver Decision is not "nationally applicable," it is, under section 307(b)(1), a "locally or regionally applicable" final action. Therefore, under section 307(b)(1), venue in the D.C. Circuit is improper unless EPA based its Nonroad Waiver Decision on a determination of "nationwide scope or effect" and EPA published its finding in that regard. *See* 42 U.S.C. § 7607(b)(1). Contrary to what it asserts, EPA did not make or publish such a finding. Instead, EPA found (and published) that its Nonroad Waiver Decision was a "final action of national applicability." *See* Nonroad Waiver Decision, 78 Fed. Reg. at 58,121. Even if this were a valid finding, which it is not, nowhere does the text of section 307(b)(1) allow EPA to substitute a finding of "national applicability" for the required finding that a decision of local or regional applicability is based on a determination of "nationwide scope or effect."

EPA nonetheless urges that its invalid "national applicability" finding is, *per se*, a finding of "nationwide scope or effect." Br. for Respondents at 34-35. But section

307(b)(1)'s text makes plain that a "nationally applicable" final action and a final action with "nationwide scope or effect" are quite different. The first sentence of section 307(b)(1) provides that challenges to nationally applicable final action may be brought only in the United States Court of Appeals for the District of Columbia. The third sentence of section 307(b)(1) provides that "notwithstanding" the fact that a final action is "locally or regionally applicable," a petition for review may be brought in the United States Court of Appeals for the District of Columbia "if such action is based on a determination of nationwide scope or effect" and EPA publishes a finding containing such determination. *See* 42 U.S.C. § 7607(b)(1). Congress left no doubt that a "nationally applicable" final action and a final action that is "local or regionally applicable" but based on a determination of "nationwide scope or effect" are not the same.

Although EPA did not make or publish a finding that its Nonroad Waiver Decision was based on a determination of nationwide scope or effect, nothing in this court's opinion is meant to suggest that EPA could not have done so. We simply have no occasion to reach the question. EPA is well versed in how to make such a finding. *See Alcoa, Inc. v. EPA*, No. 04-1189, 2004 WL 2713116, at *1 (D.C. Cir. Nov. 24, 2004) (per curiam) (denying motion to transfer petition to the United States Court of Appeals for the Seventh Circuit under section 307(b)(1) because "the Administrator has unambiguously determined that the final action . . . has nationwide scope and effect"). EPA has even, on occasion, published findings that a final action was both "nationally applicable" and based on a determination of "nationwide scope or effect." *See,* e.*g.*, Decision Granting a Waiver of Clean Air Act Preemption, 79 Fed. Reg. 46,256, 46,265 (Aug. 7, 2014). In this case, EPA did not find that its Nonroad Waiver Decision is based on a

determination of "nationwide scope or effect." There was consequently no such determination to publish.

### III. CONCLUSION

For the foregoing reasons, we dismiss the petitions for review.