# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 1, 2019            Decided June 14, 2019

No. 18-1038

SIERRA CLUB,
PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY AND ANDREW
WHEELER, ADMINISTRATOR, U.S. ENVIRONMENTAL
PROTECTION AGENCY,
RESPONDENTS

PACIFICORP AND STATE OF UTAH,
INTERVENORS

On Petition for Review of Final Action of the
United States Environmental Protection Agency

*Keri N. Powell* argued the cause for petitioner. With her
on the briefs were *Patton Dycus* and *Joshua Smith*.

*David J. Kaplan*, Senior Attorney, U.S. Department of
Justice, argued the cause for respondent Environmental
Protection Agency. With him on the brief were *Jeffrey Bossert
Clark*, Assistant Attorney General, *Jonathan D. Brightbill*,
Deputy Assistant Attorney General, and *Simi Bhat*, Attorney.

*E. Blaine Rawson* argued the cause for respondent-intervenor PacifiCorp. With him on the brief were *Megan McKay Withroder* and *Marie Bradshaw Durrant*.

*Sean D. Reyes*, Attorney General, Office of the Attorney General for the State of Utah, *Tyler R. Green*, Solicitor General, Utah Attorney General, *Christian C. Stephens*, and *Marina V. Thomas*, Assistant Attorneys General, were on the brief for intervenor State of Utah.

*Shannon S. Broome* and *Charles H. Knauss* were on the brief for *amicus curiae* Air Permitting Forum in support of respondent United States Environmental Protection Agency.

Before: ROGERS, TATEL and PILLARD, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The threshold question the court must decide that is ultimately dispositive is whether venue is proper in this court pursuant to Section 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1). Sierra Club filed a petition for the Administrator of the Environmental Protection Agency to object to a renewal of an operating permit under Title V of the Clean Air Act issued by the State of Utah for the Hunter Power Plant in Emery County, Utah. The renewal permit incorporated requirements in a preconstruction permit under Title I that the Hunter Power Plant obtained in 1997. Based on a new interpretation of his obligations under Title V, the Administrator denied the petition for objection without examining the merits of Sierra Club's claim. Sierra Club seeks vacatur and remand. Because the Order denying the petition for objection is neither a nationally applicable regulation nor determined by the Administrator to have nationwide scope or

effect, venue is not proper in this court. Accordingly, we must dismiss the petition for review.

## I.

Title V of the Clean Air Act requires certain stationary sources of air pollution to obtain operating permits. 42 U.S.C. § 7661b. The permit must include enforceable emissions standards and other conditions as necessary to assure compliance with the Clean Air Act's "applicable requirements" for air pollution prevention and control. *Id.* § 7661c(a). EPA regulations implementing Title V define "applicable requirements" to include the terms and conditions of Title I preconstruction permits, which must be obtained prior to the construction or modification of certain air pollution sources. 40 C.F.R. § 70.2; *see also* 42 U.S.C. §§ 7475, 7502(c)(5), 7503.

States administer Title V through state implementation plans, which must be approved by EPA. *Id*. § 7661a(d). When implementing these plans, state permitting authorities must submit Title V permit applications and proposed permits to EPA for review. *Id.* § 7661d(a). If the Administrator of EPA determines that a proposed permit does not comply with the applicable requirements, then the Administrator "shall . . . object to its issuance." *Id.* § 7661d(b)(1). If the Administrator does not object within 45 days of receiving a proposed permit, then "any person" may petition the Administrator to object. *Id.* § 7661d(b)(2). The Administrator of EPA must grant or deny the petition within 60 days, and he must object to the issuance of the proposed permit if the petition demonstrates that a permit is not in compliance with applicable requirements. *Id.* Title V permits must be renewed every five years. *Id.* § 7661a(b)(5)(B).

PacifiCorp operates the Hunter Power Plant in Emery County, Utah. Pursuant to the Utah state implementation plan, PacifiCorp is required to apply for a Title V operating permit for the Hunter Power Plant. *Id.* §§ 7661a(a), 7661c(a). PacifiCorp also was required to obtain a Title I preconstruction permit prior to making various modifications to the Hunter Power Plant in the late 1990s. *Id.* § 7410(a)(2)(c). On December 18, 1997, PacifiCorp obtained a preconstruction permit for the Hunter Power Plant under Utah's EPA-approved Title I preconstruction permit program. The Utah Department of Environmental Quality, Division of Air Quality ("Utah Department") found that the upcoming modifications would not raise the Hunter Power Plant's emissions levels because the Plant was placing enforceable limits on its potential to emit. Therefore, the planned construction projects were not classified as major modifications to a major source. *See* 40 C.F.R. §§ 51.165, 60.2, 60.5. On January 7, 1998, the Utah Department issued a Title V permit for the Hunter Power Plant, which incorporated the requirements from the 1997 preconstruction permit.

In September 2015, Utah published a proposed renewal Title V permit for the Hunter Power Plant. The Administrator of EPA did not object, and the Utah Department issued a renewal permit on March 3, 2016. Sierra Club then petitioned the Administrator of EPA to object to the renewal permit. 42 U.S.C. § 7661d(b)(2). In the petition for objection, Sierra Club argued, among other things, that the modifications to the Hunter Power Plant in the late 1990s did increase emissions and therefore the 1997 preconstruction permit did not assure the Plant's compliance with applicable requirements for major modifications to major sources, including the requirement to use best available control technology, 42 U.S.C. § 7475(a)(4).

The Administrator of EPA denied Sierra Club's petition for objection. He determined that, "*in light of the circumstances presented*," he would not review the preconstruction permitting decisions notwithstanding Sierra Club's argument that the 1997 preconstruction permit did not include all applicable requirements for major modifications constructed at the Hunter Power Plant in the late 1990s. Order Denying a Petition for Objection to Permit, *In re PacifiCorp Energy, Hunter Power Plant, Emery, Utah*, Permit No. 1500101002, Petition No. VIII-2016-4, at 8 (Oct. 16, 2017) (emphasis added) ("Order"). The Administrator stated that when the Utah Department issued the preconstruction permit for the Hunter Power Plant in 1997, EPA had determined the source-specific "applicable requirements" for the modifications for purposes of Title V and found no error in the decision to incorporate the terms from the Title I preconstruction permit into the Title V operating permit without further review. *Id.* at 11.

The Administrator acknowledged that his decision not to review the substantive merits of Sierra Club's petition for objection was based on a different interpretation of "applicable requirements," as defined in 40 C.F.R. § 70.2, than had been previously applied when Administrators had substantively reviewed Title I preconstruction permit decisions in later Title V proceedings. *See id.* at 8–9. Under this Administrator's analysis of the Clean Air Act's purpose and scheme, the purpose of Title V is to consolidate all requirements into a single operating permit, not to review the merits of previous Title I preconstruction permitting decisions.

Sierra Club timely petitions for review of the Order denying the petition for objection to renewal of the Title V operating permit of the Hunter Power Plant; it also filed a protective appeal in the U.S. Court of Appeals for the Tenth

Circuit, which is being held in abeyance pending the outcome here. *Sierra Club v. EPA*, Case No. 18-9507 (10th Cir.). Sierra Club seeks vacatur of the Order and remand for the Administrator to respond to the merits of the argument in the petition for objection that the Hunter Power Plant's 1997 Title I preconstruction permit was based on an erroneous classification of modifications in the late 1990s.

## II.

Section 307(b)(1) of the Clean Air Act provides, in relevant part:

> A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air standard . . . or any other *nationally applicable* regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of the Administrator's action in approving or promulgating any implementation plan . . . or any other final action of the Administrator under this chapter . . . which is *locally or regionally applicable* may be filed only in the United States Court of Appeals for the appropriate circuit. Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia if such action is based on a *determination of nationwide scope or effect* and if in taking such action the Administrator *finds and publishes* that such action is based on such a determination.

42 U.S.C. § 7607(b)(1) (emphases added).

This court has held that that the venue provision of 42 U.S.C. § 7607(b)(1) is not jurisdictional. *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 879–80 (D.C. Cir. 2015); *Tex. Mun. Power Agency v. EPA*, 89 F.3d 858, 867 (D.C. Cir. 1996). Therefore, we begin by addressing Intervenor PacifiCorp's contention that Sierra Club lacks standing under Article III of the Constitution to obtain review of the Administrator's Order. Concluding there is standing, we then turn to the question of venue.

**A.**

PacifiCorp maintains Sierra Club has not sufficiently shown that emissions from the Hunter Power Plant cause injury to its members or that their injuries would be redressable by a change in the Hunter Plant's 2016 Title V permit. It claims the Hunter Power Plant's emissions have already been on a downward trend over the past couple of decades. Intervenor PacifiCorp Br. 18–21.

To satisfy "the irreducible constitutional minimum of standing," a party must establish (1) that it has "suffered an injury in fact" that is both "concrete and particularized" and "actual or imminent," (2) that the injury is "fairly trace[able] to the challenged action of the defendant," and (3) that the injury is "likely . . . [to] be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (first alteration in original). For an organization to bring suit on behalf of its members, it must demonstrate "its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181

(2000). When "a party assert[s] a procedural injury," it "enjoys a somewhat relaxed test as to whether compliance with the procedural requirement would lead to 'redress' of the party's substantive injury." *Ass'n of Am. Physicians & Surgeons v. Sebelius*, 746 F.3d 468, 472 (D.C. Cir. 2014).

Sierra Club's standing declarations establish that it has standing. The Hunter Power Plant's emissions contribute to haze in Arches National Park, Capitol Reef National Park, and Canyonlands National Park. *See* Approval, Disapproval and Promulgation of Air Quality Implementation Plans; Partial Approval and Partial Disapproval of Air Quality Implementation Plans and Federal Implementation Plan; Utah; Revisions to Regional Haze State Implementation Plan; Federal Implementation Plan for Regional Haze, 81 Fed. Reg. 2004, 2004, 2016 (Jan. 14, 2016). Some of Sierra Club's members who regularly visit those parks have filed declarations that the haze presents health concerns and reduces their enjoyment of the parks. *See* Wayne Y. Hoskisson Decl. 1–5; Darrell Mensel Decl. 1–5. They state that if Sierra Club succeeds on the merits, the Hunter Power Plant would have to "reduce its air pollution," thereby reducing the Hunter Power Plant's injury to them. Hoskisson Decl. 3–4; Mensel Decl. 3–4.

This case is therefore like *Sierra Club v. EPA*, 699 F.3d 530, 533 (D.C. Cir. 2012), where this court held that Sierra Club had standing because its members "unquestionably live[d] within zones they claim are exposed to" regulated air pollutants and "our vacatur [would] require EPA . . . to entertain and respond to the Club's claims about the necessary scope and stringency of the standards" for regulating those pollutants. Sierra Club has "shown its members' . . . concrete interest" of a type that its asserted procedural interest is

"plainly designed to protect" and that its injury "is potentially redressable" by further agency action on remand. *Id.*

This suffices to establish that Sierra Club has standing to petition for review of the Order. *NRDC v. EPA*, 749 F.3d 1055, 1062 (D.C. Cir. 2014); *see also Friends of Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–85 (2000). For purposes of standing, the court assumes the validity of the petitioner's claims. *Sierra Club*, 699 F.3d at 533. Even if the Hunter Plant has made progress in reducing its emissions, neither it nor EPA disputes that its emissions could be reduced further to alleviate harm Sierra Club's members continue to suffer.

**B.**

Under Section 307(b) of the Clean Air Act, 42 U.S.C. § 7607(b)(1), there are two routes for venue to be proper in this court. First, EPA's regulation or other final action may itself be nationally applicable. Second, EPA's Administrator may determine that the otherwise locally or regionally applicable action has nationwide scope or effect and publish his finding. In distinguishing between nationally and regionally applicable agency action, Section 307(b) does not track the familiar distinction under the Administrative Procedure Act between rules and adjudications. *See Safari Club Int'l v. Zinke*, 878 F.3d 316, 332–33 (D.C. Cir. 2017). Nor does it categorically direct review of orders resolving adjudications to the regional circuits and review of legislative rules to this court. Instead, the court must decide whether the challenged action is properly before this court under either route, and we conclude that Sierra Club's petition for review of the Administrator's denial of its petition for objection to a state-issued permit is not properly before this court under either route.

First, the Order is not nationally applicable. The court need look only to the face of the agency action, not its practical effects, to determine whether an action is nationally applicable. *Dalton Trucking*, 808 F.3d at 881; *Am. Road & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 456 (D.C. Cir. 2013). On its face, the Order denies Sierra Club's petition for objection to a single permit for a single plant located in a single state. The Order has immediate effect only for the Hunter Power Plant. If EPA relies on the statutory interpretation set forth in the Order in future adjudications or other final agency action, it will be subject to judicial review upon challenge.

The Order's application beyond the instant case is limited by its own terms. The Administrator expressly confined his novel interpretation of Title V to the specific circumstances of the Hunter Power Plant, denying the protest order "in light of the circumstances presented here" and did not speak more broadly. Order at 8, 20. Indeed, the Administrator noted he was "not considering at this time whether other circumstances may warrant a different approach." *Id.* at 11 n.21. He confined his restrictive interpretation of Title V "to the facts of this Claim, where a permitting authority issued a source-specific Title I preconstruction permit subject to public notice and comment and for which judicial review was available" at that time at the state level. *Id.* The Administrator further noted that if such checks were lacking, then it might "be appropriate for EPA to review the applicability [of the Title I preconstruction requirements] to a particular source in [T]itle V permitting." *Id.* at 18 n.34. This avowedly case-specific Title V analysis supports the conclusion that the Order is "locally or regionally" applicable under Section 307(b).

Second, the Administrator of EPA has not published a finding that the Order is based on a determination that has nationwide scope or effect. EPA published the Order on its

website and published a notice of the Order's availability in the Federal Register, 82 Fed. Reg. 58,196 (Dec. 11, 2017). But mere publication of the Order is not sufficient for purposes of a finding under Section 307(b)(1). *See Dalton*, 808 F.3d at 881–82. The publication must reflect or otherwise indicate that the Administrator of EPA has determined his action or other agency action is based on a determination of nationwide scope or effect. The Administrator made no such determination here. Although the court has yet to decide whether EPA's failure to make such a finding is subject to judicial review, even assuming review is available, the Administrator's refusal to make such a determination would not be arbitrary and capricious in the factual circumstances on which Sierra Club's petition was based, namely whether the recent state issuance of a renewal Title V permit for a particular plant should be approved. For example, in *American Road*, 705 F.3d at 456, this court held that venue for review of EPA's approval of revisions to California's state implementation plan lay in the Ninth Circuit. The Administrator of EPA had not published a finding that the approval was based upon a determination of nationwide scope or effect. The court explained that even if it could review the Administrator's failure to publish a finding, such failure would not be unreasonable because the approval only applied to projects within the covered geographic jurisdiction. *Id.*

That the interpretative reasoning offered by the Administrator in denying Sierra Club's petition for objection has precedential effect in future EPA proceedings is typical of adjudicative orders, including regionally and locally applicable ones. *See Am. Road*, 705 F.3d at 456. Here, the Order purports to address the Administrator's Title V-permit role only "[i]n circumstances such as those present here where a preconstruction permit has been duly obtained" many years ago. Order at 10. The failure to make a "determination of

nationwide scope or effect" in these circumstances would not be unreasonable, much less arbitrary and capricious.

Accordingly, venue is lacking in this court and Sierra Club's petition for review is dismissed without reaching the merits.