# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 9, 2022　　　　　　Decided August 26, 2022

No. 20-1121

SIERRA CLUB, ET AL.,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY AND MICHAEL S.
REGAN, ADMINISTRATOR, U.S. ENVIRONMENTAL PROTECTION
AGENCY,
RESPONDENTS

BCCA APPEAL GROUP, ET AL.,
INTERVENORS

———

On Petition for Review of Final Actions
of the Environmental Protection Agency

———

*Seth L. Johnson* argued the cause for petitioners. With him on the briefs was *Neil Gormley*. *Adam M. Kron* entered an appearance.

*Meghan E. Greenfield*, Senior Counsel, U.S. Department of Justice, argued the cause for respondents. On the brief were *Todd Kim*, Assistant Attorney General, and *Alan D. Greenberg*, Attorney.

*Aaron M. Streett* argued the cause for intervenors. With him on the brief were *Matthew L. Kuryla, Ken Paxton,* Attorney General, Office of the Attorney General for the State of Texas, *Priscilla M. Hubenak*, Chief, Environmental Protection Division, and *Linda B. Secord* and *John R. Hulme,* Assistant Attorneys General.

Before: SRINIVASAN, *Chief Judge*, TATEL[*] and KATSAS, *Circuit Judges*.

Opinion for the court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*: Under the Clean Air Act, areas failing to attain the Environmental Protection Agency's national ambient air quality standards must implement measures aimed to achieve and maintain compliance. In 2020, EPA issued two rules lifting certain of those measures in the Houston and Dallas areas. Sierra Club and other environmental groups challenge those rules in a petition for review filed in our court.

We cannot reach the merits of their challenge because of a threshold bar against our consideration of the petition. Under the Clean Air Act's venue provision, 42 U.S.C. § 7607(b)(1), venue over the petition would lie in our court only if the challenged rules are nationally (as opposed to locally or regionally) applicable or if EPA finds that the rules are based on a determination of nationwide scope or effect and publishes that finding. Because neither of those conditions is satisfied, the petition must be brought in the United States Court of

---

[*] Judge Tatel, who assumed senior status after this case was argued and before the date of this opinion, recused himself from the case after oral argument.

Appeals for the Fifth Circuit.  We thus transfer the petition to that court.

I.

A.

The Clean Air Act directs EPA to establish national ambient air quality standards (NAAQS) for certain airborne pollutants "the attainment and maintenance of which . . . are requisite to protect the public health."  42 U.S.C. §§ 7408(a), 7409(b)(1).  EPA must review and revise the NAAQS every five years "as may be appropriate" under the statute.  *Id.* § 7409(d)(1).

Once EPA sets the standards, the states are responsible for implementing them.  To do so, each state must adopt a state implementation plan (SIP) specifying the state's chosen methods of achieving and maintaining each NAAQS.  *Id.* §§ 7407, 7410.  Each state also must submit its SIP (and any later revisions) to EPA for approval.  *Id.* § 7410(a)(1), (k).

As part of the implementation process, a state must designate all areas within its borders as "attainment" or "nonattainment" (or "unclassifiable") as to each pollutant.  *Id.* § 7407(d).  SIPs for nonattainment areas must include emission reduction measures designed to bring the areas into compliance with the NAAQS.  *Id.* § 7502(c)(1), (6).  Once EPA approves a nonattainment designation for a particular area, it can be redesignated to attainment only upon satisfaction of five statutory conditions, including approval by the agency of a "maintenance plan" assuring that the area will continue to meet the NAAQS for at least ten years.  *Id.* § 7407(d)(3)(E); *see id.* § 7505a(a).

In 1990, Congress amended the Act "in favor of more comprehensive regulation" of pollutants "particularly injurious to public health." *S. Coast Air Quality Mgmt. Dist. v. EPA*, 472 F.3d 882, 887 (D.C. Cir. 2006) (*South Coast I*). One of those pollutants was ozone. The 1990 amendments adopted a "graduated classification scheme" for ozone nonattainment areas dictating "mandatory controls that each state must incorporate into its SIP." *Id.* Under that scheme, areas that fail to meet attainment deadlines face increasingly strict sets of mandatory controls, which eventually include a requirement to impose a fee program for major stationary sources of ozone. *See* 42 U.S.C. § 7511d.

The 1990 amendments also enacted an anti-backsliding provision that applies if EPA relaxes a NAAQS as part of its five-year review. In that event, EPA must require areas yet to attain the previous, stricter standard to implement "controls which are not less stringent than the controls applicable to areas designated nonattainment before such relaxation." *Id.* § 7502(e).

B.

In 1997, EPA adopted stricter NAAQS for ozone. National Ambient Air Quality Standards for Ozone, 62 Fed. Reg. 38,856 (July 18, 1997). The agency later adopted an implementation rule that, among other things, construed the Act's anti-backsliding provision to apply not only when EPA relaxes a NAAQS but also when it strengthens one. Final Rule to Implement the 8-Hour Ozone National Ambient Air Quality Standard—Phase 1, 69 Fed. Reg. 23,951, 23,972 (Apr. 30, 2004). EPA reasoned that if Congress desired to maintain existing controls when a NAAQS is relaxed, Congress also must have intended to maintain such controls when a NAAQS

is strengthened. *Id.* This court sustained EPA's interpretation. *South Coast I*, 472 F.3d at 900.

EPA's next major action on ozone came in 2008, when it again strengthened the ozone NAAQS. National Ambient Air Quality Standards for Ozone, 73 Fed. Reg. 16,436 (Mar. 27, 2008). In its implementation rule, the agency provided for three procedures by which areas designated nonattainment under the now-revoked 1997 NAAQS could shed anti-backsliding requirements associated with that standard. Implementation of the 2008 National Ambient Air Quality Standards for Ozone: State Implementation Plan Requirements, 80 Fed. Reg. 12,264, 12,301–05 (Mar. 6, 2015). On judicial review, we rejected two of the procedures because they would have allowed for termination of anti-backsliding obligations even if the relevant area failed to meet all five statutory criteria for redesignation from nonattainment to attainment. *S. Coast Air Quality Mgmt. Dist. v. EPA*, 882 F.3d 1138, 1149, 1152 (D.C. Cir. 2018) (*South Coast II*). One of the rejected procedures would have established a so-called "redesignation substitute," under which an area could qualify for removal of anti-backsliding controls tied to the revoked 1997 NAAQS without satisfying all five statutory criteria for redesignation. *See* 80 Fed. Reg. at 12,304–05.

## C.

After our decision in *South Coast II*, EPA published final rules lifting ozone anti-backsliding requirements for the Houston and Dallas nonattainment areas. *See* Air Plan Approval; Texas; Houston-Galveston-Brazoria Area Redesignation and Maintenance Plan for Revoked Ozone National Ambient Air Quality Standards; Section 185 Fee Program, 85 Fed. Reg. 8,411 (Feb. 14, 2020); Air Plan Approval; Texas; Dallas-Fort Worth Area Redesignation and

Maintenance Plan for Revoked Ozone National Ambient Air Quality Standards, 85 Fed. Reg. 19,096 (Apr. 6, 2020). Both of those rules approved revisions to Texas's SIP.

In the rules, EPA conceived a new "redesignation substitute" in place of the one this court had vacated in *South Coast II*. Under the substitute, anti-backsliding controls for a revoked (e.g. 1997) standard may be terminated as long as an area meets the five statutory redesignation criteria with respect to that revoked standard, even if the area has not achieved attainment under the current (e.g. 2008) standard or fulfilled the redesignation criteria associated with that standard. 85 Fed. Reg. at 8,411, 8,413–14; 85 Fed. Reg. at 19,097–98. Applying that approach, EPA terminated the Houston and Dallas areas' anti-backsliding obligations associated with now-revoked ozone standards. 85 Fed. Reg. at 8,411, 8,413–14; 85 Fed. Reg. at 19,097–98. In addition, the rules approved maintenance plans for both areas designed to ensure their continued compliance with the revoked NAAQS. 85 Fed. Reg. at 8,424; 85 Fed. Reg. at 19,107. Finally, EPA approved a fee program for Houston. 85 Fed. Reg. at 8,412 (citing 42 U.S.C. § 7407(d)(3)(E)(v)).

Sierra Club, Downwinders At Risk, and Texas Environmental Justice Advocacy Services (collectively, Sierra Club) petitioned for review of the rules. The petition contends that EPA's terminations of Houston's and Dallas's anti-backsliding requirements violate the agency's regulations and the Clean Air Act. Sierra Club also contemporaneously filed a protective petition for review in the Fifth Circuit, which is holding that petition in abeyance pending the outcome here. *See Sierra Club v. EPA*, No. 20-60303 (5th Cir. Apr. 16, 2020).

In 2021, following the change in presidential administration, we granted EPA's motion to hold this case in

abeyance while it reviewed the challenged rules. EPA subsequently announced its intention to continue defending the rules in substantial part, except for the approval of Houston's fee program. We then returned the case to the active docket (and we also granted EPA's unopposed motion for remand without vacatur as to its approval of the Houston fee program).

## II.

Sierra Club challenges EPA's decisions to lift anti-backsliding requirements in Houston and Dallas. EPA responds that the proper—and exclusive—venue for Sierra Club's challenge is the Fifth Circuit. We agree with EPA.

The Clean Air Act's venue provision states, in relevant part:

> A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard . . . or *any other nationally applicable* regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 of this title . . . or any other final action of the Administrator under this chapter . . . which is *locally or regionally applicable* may be filed only in the United States Court of Appeals for the appropriate circuit. Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia if such action is based on a *determination of nationwide scope or effect* and if in taking such action the Administrator *finds and publishes* that such action is based on such a determination.

42 U.S.C. § 7607(b)(1) (emphases added).

The provision thus establishes two routes by which venue may be proper in this court. *See Chevron U.S.A. Inc. v. EPA*, No. 21-1140 (D.C. Cir. Aug. 12, 2022), slip op. at 10–11; *Sierra Club v. EPA*, 926 F.3d 844, 849 (D.C. Cir. 2019); *Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 455 (D.C. Cir. 2013). First, this court is the exclusive venue when EPA's challenged action is "nationally applicable" rather than "locally or regionally applicable." 42 U.S.C. § 7607(b)(1). Second, and alternatively, venue also lies exclusively in this court if an otherwise "locally or regionally applicable" action "is based on a determination of nationwide scope or effect" and EPA "finds and publishes that such action is based on such a determination." *Id.* Neither route applies here.

## A.

First, the challenged rules are locally or regionally applicable, not nationally applicable. To determine whether a rule promulgated under the Clean Air Act is nationally applicable, the court "need look only to the face of the agency action, not its practical effects." *Sierra Club*, 926 F.3d at 849; *see Chevron*, slip op. at 11. The textbook example of nationally applicable action by the EPA, as the venue statute itself specifies, is the promulgation of a NAAQS—i.e., a "*national* primary or secondary ambient air quality standard." 42 U.S.C. § 7607(b)(1) (emphasis added). The rules challenged here, by contrast, on their face apply only to Houston and Dallas.

The Houston rule accordingly is titled: "Air Plan Approval; Texas; Houston-Galveston-Brazoria Area Redesignation and Maintenance Plan for Revoked Ozone National Ambient Air Quality Standards; Section 185 Fee Program." 85 Fed. Reg. at 8,411. And in keeping with the geographic focus of its title, the rule explains that it "pertain[s]

to the Houston-Galveston-Brazoria (HGB) area"; that "EPA is approving the plan for maintaining the . . . ozone NAAQS through the year 2032 *in the HGB area*"; that "EPA is determining that *the HGB area* continues to attain the [revoked] ozone NAAQS and has met the five [Clean Air Act] criteria for redesignation" with respect to those revoked standards; and that "EPA is terminating all anti-backsliding obligations for *the HGB area* for the . . . 1997 ozone NAAQS." *Id.* (emphases added). The Dallas rule contains a parallel—and equally localized—title and description of its provisions, this time for "the Dallas-Fort Worth (DFW) area." 85 Fed. Reg. at 19,096.

In short, the challenged rules approve maintenance plans, determine that certain statutory redesignation criteria are satisfied, and terminate anti-backsliding requirements for—and only for—the Houston and Dallas areas. Those are the hallmarks of a locally or regionally applicable action, not a nationally applicable one. *See Chevron*, slip op. at 11–12; *Sierra Club*, 926 F.3d at 849.

What is more, the venue statute expressly provides that EPA's action "in approving or promulgating any implementation plan under section 7410 of this title"—i.e., in approving or promulgating a SIP—is "a locally or regionally applicable" action. *See* 42 U.S.C. § 7607(b)(1). Indeed, that action is "the *prototypical* 'locally or regionally applicable' action." *Am. Rd. & Transp. Builders Ass'n*, 705 F.3d at 455 (emphasis added). That is understandable, as a SIP by nature concerns a particular state. And here, tellingly, the challenged rules take the form of approved revisions to Texas's SIP.

The proposed rules thus begin by stating that EPA is "proposing to approve a revision to the Texas State Implementation Plan (SIP)." Air Plan Approval; Texas;

Houston-Galveston-Brazoria Area Redesignation and Maintenance Plan for Revoked Ozone National Ambient Air Quality Standards; Section 185 Fee Program, 84 Fed. Reg. 22,093, 22,093 (May 16, 2019) (Houston); Air Plan Approval; Texas; Dallas-Fort Worth Area Redesignation and Maintenance Plan for Revoked Ozone National Ambient Air Quality Standards, 84 Fed. Reg. 29,471, 29,471 (June 24, 2019) (Dallas). And the final rules correspondingly specify at their outset that EPA "is approving revisions to the Texas State Implementation Plan (SIP)." 85 Fed. Reg. at 8,411; 85 Fed. Reg. at 19,096. The fact that the rules constitute SIP revisions reconfirms their fundamentally local or regional character.

In response, Sierra Club maintains that the rules are nationally applicable because they rest on interpretations of the Clean Air Act having no geographic limitation. In particular, Sierra Club emphasizes, EPA announced a new understanding of its authority to terminate anti-backsliding obligations in broad terms lacking any evident limitation to the Houston and Dallas areas. As we recently explained, however, "many locally or regionally applicable actions may require interpretation of the Clean Air Act's statutory terms, and that kind of interpretive exercise alone does not transform a locally applicable action into a nationally applicable one." *Chevron*, slip op. at 13. The fact that EPA's "interpretative reasoning" may have "precedential effect in future EPA proceedings . . . does not make it nationally applicable." *Id.* (citations and quotation marks omitted); *see Sierra Club*, 926 F.3d at 850; *Am. Rd. & Transp. Builders Ass'n*, 705 F.3d at 456.

Sierra Club further argues that EPA's approach in the challenged rules, by allowing an area to shed anti-backsliding requirements based on a new conception of a permissible "redesignation substitute," effectively amends the agency's national implementation regulations. And an amendment of

national regulations, Sierra Club posits, is itself a nationally applicable action. The challenged rules, however, do not purport to amend EPA's implementation regulations. And to the extent EPA were to apply the same approach in subsequent actions, "it will be subject to judicial review upon challenge." *Sierra Club*, 926 F.3d at 849. The "immediate effect" of the rules is confined to Houston and Dallas, rendering them locally or regionally applicable. *See id.*; *see also Dalton Trucking, Inc. v. U.S. EPA*, 808 F.3d 875, 880–81 (D.C. Cir. 2015).

B.

Even if the challenged rules are locally or regionally applicable, recall that the venue statute provides an alternate pathway under which venue still lies solely in this court. Specifically, venue in this court is exclusive if locally or regionally applicable action (i) "is based on a determination of nationwide scope or effect," and (ii) EPA "finds and publishes that such action is based on such a determination." 42 U.S.C. § 7607(b)(1). Both of those prongs must be met for venue to lie here under the alternate route.

Here, however, all agree that as to the second prong, EPA never made and published a finding that the challenged rules in this case were based on a determination of nationwide scope or effect. According to Sierra Club, though, the agency's failure to do so was arbitrary and capricious and we should so conclude. In that event, Sierra Club submits, venue would properly lie here.

We have never decided whether EPA's failure to make and publish a finding of nationwide scope or effect is subject to judicial review. On two previous occasions, we assumed without deciding that review is available, and concluded that in any event, EPA's refusal to make a determination of nationwide scope or effect was not arbitrary and capricious in

light of the factual circumstances.  *See Sierra Club*, 926 F.3d at 850; *Am. Rd. & Transp. Builders Ass'n*, 705 F.3d at 456.

We now resolve the question we have thus far left unanswered.  We hold, in agreement with the only other court of appeals to decide the issue, that EPA's decision whether to make and publish a finding of nationwide scope or effect is committed to the agency's discretion and thus is unreviewable. *See Texas v. U.S. EPA*, 983 F.3d 826, 834–35 (5th Cir. 2020). As a result, we need not determine whether the rules here were based on a determination of nationwide scope or effect.

The Supreme Court has "long applied a strong presumption favoring judicial review of administrative action." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018) (quoting *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 489 (2015)).  The Administrative Procedure Act, though, codifies the traditional exception that agency action is unreviewable when it is "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  That exception applies when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Agency action, then, is unreviewable when "courts have no legal norms pursuant to which to evaluate the challenged action, and thus no concrete limitations to impose on the agency's exercise of discretion."  *Physicians for Social Responsibility v. Wheeler*, 956 F.3d 634, 643 (D.C. Cir. 2020) (quoting *Sec'y of Lab. v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006)).

That is the case here.  We have no meaningful standard against which to judge EPA's exercise of discretion to make and publish (or not) a finding of nationwide scope or effect.

The relevant statutory text provides that venue lies in this court if locally or regionally applicable action "is based on a determination of nationwide scope or effect *and* if in taking such action the Administrator finds and publishes that such action is based on such a determination." 42 U.S.C. § 7607(b)(1) (emphasis added). The statute makes clear that the requirement that EPA make and publish a finding is distinct from the requirement that the action be based on a determination of nationwide scope or effect. Were EPA bound to make and publish a finding whenever the challenged action is based on a determination of nationwide scope or effect, the two prongs would collapse into one, rendering the second prong meaningless.

Because the two prongs are distinct, the first prong (whether the action is based on a determination of nationwide scope or effect) cannot itself offer the "meaningful standard against which to judge" EPA's exercise of discretion on the second prong (whether to make and publish a finding to that effect). *Chaney*, 470 U.S. at 830. Nor does the Act supply any other standard—much less a meaningful one—for evaluating EPA's decision on the second prong. The statute, in other words, contains nothing "constrain[ing] the [agency's] authority" in that regard. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2568 (2019).

That understanding coheres with the broader framework of the Clean Air Act's judicial review scheme. Under the Act, venue for challenges to nationally applicable action lies exclusively in the D.C. Circuit. Review of locally or regionally applicable action based on local or regional determinations, by contrast, must be had in the appropriate regional circuit. That leaves the intermediate category of locally or regionally applicable actions that are based on a determination of nationwide scope or effect. For review of action in that middle

category, Congress settled on a different approach: it entrusted EPA with discretion to determine the proper venue as the agency sees fit. In deciding whether to make and publish a finding of nationwide scope or effect—and thus to direct review to this court, as opposed to a regional circuit—EPA may weigh any number of considerations. The Act offers "no basis on which a reviewing court could properly assess" the agency's discretionary decision. *Webster v. Doe*, 486 U.S. 592, 600 (1988).

We thus join the Fifth Circuit in holding that EPA's decision whether to make and publish a finding of nationwide scope or effect is committed to agency discretion by law. *See Texas*, 983 F.3d at 834–35. A court may review whether an action by EPA is nationally applicable, as well as whether locally or regionally applicable action is based on a determination of nationwide scope or effect when EPA so finds and publishes. But a court may not "second-guess" the agency's discretionary decision to make and publish (or not) a finding of nationwide scope or effect. *Id.* at 835.

\* \* \* \* \*

For the foregoing reasons, venue in this matter lies exclusively in the Fifth Circuit, not this court. Rather than dismiss the petition, we grant Sierra Club's unopposed request to transfer it to the Fifth Circuit. *See Alexander v. Comm'r*, 825 F.2d 499, 502 (D.C. Cir. 1987) (per curiam).

*So ordered.*